GETTY OIL COMPANY and
Texaco Inc., Petitioners,

v.

INSURANCE COMPANY OF NORTH
AMERICA, NL Industries, Inc. and Yo-
uell and Companies, Respondents.

No. D–1937.

Supreme Court of Texas.

Nov. 11, 1992.

Rehearing Overruled March 3, 1993.

Joe G. Roady, Mel Smith, Patrick L. Hughes, Mary Ann A. Bellatti, and Karen S. Cook, Houston, for petitioners.

Tom Lorance, Jr., Byron Lee, Tom Bayko, John C. Allen, Jack G. Carnegie, Linda C. Schoonmaker, Houston, Michael W. Jahnke, New York City, David W. Prasifka, Houston, Thomas Engelhardt, Chicago, Ill., and William K. Luyties, Houston, for respondents.

## OPINION

PHILLIPS, Chief Justice.

The purchaser of certain chemicals brought suit against the seller and its insurers, claiming that they were contractually obligated to provide insurance to cover a judgment against the purchaser in a wrongful death action precipitated by the explosion of the chemicals. The trial court granted summary judgment for the defendants on four grounds: (1) a contract provision requiring the seller to purchase liability insurance for the buyer violated the Texas Oilfield Anti–Indemnity Statute, Tex. Rev.Civ.Stat.Ann. art. 2212b (now codified and amended at Tex.Civ.Prac. & Rem.Code §§ 127.001–.007 (Vernon 1986 & Supp. 1992)); (2) the same contractual provision violated the common law express negligence rule; (3) the prior litigation of a related indemnity provision precluded the present suit under the doctrine of res judicata; and (4) specific issues were precluded by collateral estoppel. The court of appeals affirmed on the theory of res judicata. 819 S.W.2d 908 (Tex.App.—Houston 1991). We affirm the judgment of the court of appeals in part, reverse in part, and remand the cause to the trial court for further proceedings.

## I. Facts and Procedural Background

Getty Oil Company ("Getty") purchased various chemicals from NL Industries, Inc. ("NL") for Getty's oil production and exploration operations in the Midland, Texas, area. A purchase order numbered "HB–5357" was in effect from August 1, 1983, to July 31, 1984. It included the following provisions:

4. INSURANCE AND INDEMNITY: Seller agrees to maintain at Seller's sole cost and expense, from the time operations are commenced hereunder until Order is fully performed and discharged,

insurance of all types and with minimum limits as follows, and furnish certificates to Purchaser's Purchasing Department evidencing such insurance with insurers acceptable to Purchaser:

| | | STATUTORY |
|---|---|---|
| WORKMEN'S COMPENSATION EMPLOYERS' LIABILITY | | $500,000 |
| GENERAL LIABILITY: | BODILY INJURY | 500,000 |
| AUTOMOBILE LIABILITY: | BODILY INJURY | 500,000 |

. . .

---

All insurance coverages carried by Seller, whether or nor required hereby, shall extend to and protect Purchaser ... to the full amount of such coverages and shall be sufficiently endorsed to waive any and all claims by the underwriters or insurers against Purchaser ...

Seller shall indemnify, defend and hold harmless Purchaser ... from any and all losses, claims, actions, costs, expenses, judgments, subrogations, or other damages resulting from injury to any person (including injury resulting in death), or damage (including loss or destruction to property of whatsoever nature of any person[ )] arising out of or incident to the performance of the terms of this Order by Seller (including, but not limited to, Seller's employees, agents, subcontractors, and others designated by Seller to perform work or services in, about, or attendant to, the work and services under the terms of this Order.) Seller shall not be held responsible for any losses, expenses, claims, subrogations, actions, costs, judgments, or other damages, directly, solely, and proximately caused by the negligence of Purchaser. Insurance covering this indemnity agreement shall be provided by Seller.

The liability of Seller, as herein above provided, shall not be limited by the insurance coverage required of Seller.

On November 22, 1983, a barrel of chemical demulsifier delivered by NL under Order No. HB–5357 exploded in the vicinity of a Getty well, killing Carl Duncan, an independent contractor working for Getty.

Duncan's estate and survivors brought wrongful death and survival actions in the 130th Judicial Court of Matagorda County against Getty, NL and its subsidiaries, and others.[1] Getty filed a cross-claim against NL, alleging that NL's negligence proximately caused the injury to Duncan, that the chemicals manufactured by NL were defective, and that NL breached warranties in connection with the sale of the chemicals. Getty also asserted a contractual right of indemnity against NL under the terms of HB–5357 (quoted above), and a contribution claim because of NL's negligence. The jury found Getty 100% negligent and grossly negligent in causing the accident. The trial court rendered judgment on the jury verdict for $3,757,000 actual damages and $25,000,000 punitive damages. The trial court also rendered judgment that "all Cross–Actions for contributions and/or indemnity based upon the contracts are denied." Getty appealed the portion of the judgment denying it contribution and indemnity, and the court of appeals affirmed the judgment of the trial court. *Getty Oil Corp. v. Duncan,* 721 S.W.2d 475 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Getty's insurers, Travellers Insurance Company, Travellers Indemnity Company, and English & American Insurance Company, settled the claim for $14 million.

Getty then filed an insurance claim with NL's insurers. After they refused to hon-

---

1. In 1984, Texaco, Inc. acquired Getty. Accordingly, Texaco was joined as a party defendant. The plaintiffs also acted against Rimes Well Service, a company that had been doing work at the accident site, and Tony Roa, one of its employees.

or the claim, Getty sued NL and its primary and excess insurance carriers, Insurance Company of North America ("INA") and Youell and Companies[2] ("Youell"), respectively.[3] Getty alleged that, pursuant to the terms of the HB–5357 "Insurance and Indemnity" provision, NL's insurance should cover Getty for its liability in the *Duncan* case. Getty brought claims against NL for breach of the contract to purchase insurance in its behalf, violation of Tex.Bus. & Com.Code § 1.203 (Tex. UCC) (Vernon 1968) (obligation of good faith), breach of the duty of good faith and fair dealing, negligence, violation of the Texas Deceptive Trade Practices Act (DTPA), Tex.Bus. & Com.Code §§ 17.41–.63 (Vernon 1987 & Supp.1992), and common law fraud. Against INA and Youell, Getty asserted claims for breach of the contract to extend it insurance coverage, violation of Tex.Ins.Code art. 3.62 (Vernon 1981) (repealed) (failure to pay claim), breach of the duty of good faith and fair dealing, negligence, violation of the DTPA, and common law fraud.

NL, INA and Youell jointly moved for summary judgment, arguing that (1) the terms of HB–5357 did not make Getty an additional insured under NL's policies; (2) the Insurance and Indemnity scheme of HB–5357 was prohibited by the Texas Oilfield Anti–Indemnity Statute, Tex.Rev.Civ. Stat.Ann. art. 2212b (now codified and amended at Tex.Civ.Prac. & Rem.Code §§ 127.001–.007); and (3) Getty's claims were barred by res judicata and collateral estoppel. The defendants also joined Getty's insurers as third party defendants, claiming that Getty's policies with them at least partially relieved the defendants of covering Getty's liability.

On May 3, 1990, the trial court granted the defendants' motions for summary judgment. The trial court also granted the defendants' motion to sever the third party claims against Getty's insurers, and ordered that the severed actions not go forward until resolution of the action between Getty and the defendants. Getty appealed the summary judgment for defendants, and the court of appeals affirmed on res judicata grounds, holding that Getty's claims were barred because it was seeking the same relief under a different theory that it unsuccessfully sought in the first suit. 819 S.W.2d at 915. Getty now seeks a reversal of the court of appeals' judgment and the trial court's summary judgment.[4]

## II. Res Judicata

### A. Getty v. NL

■ We recently clarified that Texas follows the "transactional" approach to res judicata. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex.1992). Under this approach, a judgment in an earlier suit "precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." *Id.* at 630; *Texas Water Rights Comm. v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979).

■ We conclude that Getty's present suit arises out of the same subject matter as its earlier cross-claim against NL asserted in the *Duncan* suit. The Restatement (Second) of Judgments, which recognizes

2. Youell & Cos. is a consortium of offshore insurance companies and Lloyds syndicates.

3. Getty originally filed suit in the 10th District Court in Galveston County. The defendants removed to the United States District Court for the Southern District of Texas. The federal court held that Getty's claims were barred by res judicata, but the United States Court of Appeals for the Fifth Circuit vacated the judgment, holding that complete diversity of citizenship was lacking. *Getty Oil Corp., a Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254 (5th Cir. 1988). The case was remanded to state court in Galveston County, and then transferred by agreement to Harris County, where it was assigned to the 280th District Court.

4. Three amici curiae have submitted briefs in support of Getty's position: Texas Mid–Continent Oil and Gas Association, Shell Oil Company, and Amerada Hess Corporation. Three amici curiae have also submitted briefs in support of the Respondents' position: the International Association of Drilling Contractors (IADC); the Associated General Contractors of Texas (AGC), and the Association of Oilwell Servicing Contractors (AOSC).

the transactional test, suggests that factors to consider in determining whether facts constitute a single "transaction" are "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." Restatement (Second) of Judgments § 24 cmt. b (1980). Getty's present action against NL arose from the same accident that was adjudicated in the *Duncan* suit. The present suit also concerns the same contract, HB–5357, and the same section of that contract, the "Insurance and Indemnity" section. Finally, Getty seeks the same relief against NL here as in its earlier cross-claim: reimbursement for Getty's liability to Duncan's estate and beneficiaries. Thus, both Getty's actions against NL derived from the same transaction.[5]

Getty argues that res judicata cannot bar its present claims against NL because these claims did not accrue until judgment was rendered in the *Duncan* suit. That is, Getty had no liability and hence no need for insurance coverage until liability was assigned. The contingent nature of these claims, however, does not preclude the operation of res judicata. We held in *Barr* that "[a] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in a prior suit." 837 S.W.2d at 631. Getty could have asserted its present claims in the *Duncan* suit, with their resolution being contingent on the plaintiffs' claims. Texas Rule of Civil Procedure 51(b) provides:

**Joinder of Remedies.** Whenever a claim is one heretofore cognizable only after

another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties.

*See Parkhill Produce Co. v. Pecos Valley Southern Ry. Co.*, 348 S.W.2d 208 (Tex. Civ.App.—San Antonio 1961, writ ref'd n.r.e.). For example, we have held that an indemnitee may bring a claim against an indemnitor before judgment is assigned against the indemnitee. *See Gulf, Colorado & Santa Fe Ry. Co. v. McBride*, 159 Tex. 442, 446, 322 S.W.2d 492, 495 (Tex. 1958); *Mitchell's, Inc. v. Friedman*, 157 Tex. 424, 431, 303 S.W.2d 775, 779 (Tex. 1957); *K & S Oil Well Service, Inc. v. Cabot Corp.*, 491 S.W.2d 733, 739 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.). Forcing the indemnity suit to wait for judgment in the liability suit "would contravene the policy of the courts to encourage settlements and to minimize litigation." *Id.*

Getty itself took advantage of this rule in its initial cross-action against NL, in which Getty asserted its claim under the indemnity provision of HB–5357. The fact that Getty had no claim for indemnity against NL until the trial court rendered judgment did not preclude this cross-claim. Likewise, Getty could have brought its other contingent cross-claims against NL in the *Duncan* action. The fact that Getty's claims against NL were contingent on Getty incurring liability in the *Duncan* suit does not in and of itself preclude operation

5. This conclusion comports with a recent Fifth Circuit decision involving nearly identical facts. *Ocean Drilling and Exploration Co. v. Mont Boat Rental Services*, 799 F.2d 213 (5th Cir.1986). In that case, Mont had contractually agreed to indemnify ODECO and to purchase liability insurance that would name ODECO as an additional insured. In 1978, an ODECO employee was injured and sued both ODECO and Mont. ODECO brought a cross-claim against Mont asserting contribution and indemnity. The trial court rendered judgment of $340,000 solely against ODECO, found Mont not liable, and rendered judgment against ODECO on its claims against Mont. ODECO then brought a second suit

against Mont under the additional insured provision. The trial court held that the action was barred by res judicata. The Fifth Circuit affirmed, holding as follows:

> Although the tort-indemnity theory that ODECO asserted in [the former case] differs from the contractual liability theory it now presses, the right ODECO seeks to redress is the same: reimbursement for obligations it incurred as a result of the [prior] litigation.... Because ODECO's cause of action for tort indemnity is based on substantially the same facts as its claim for contractual indemnity, res judicata bars the belated assertion.

799 F.2d at 217.

of res judicata.[6]

We do not hold that a defendant must assert a cross-claim against a co-defendant simply because it arises from the same subject matter as plaintiff's claim. Tex.R.Civ.P. 97(e) clearly makes such a cross-claim permissive; the defendant may assert it, but is not required to. Rule 97(e) comports with the principle that res judicata applies only to *adverse* parties. Where two parties are aligned in the first action and no issues are drawn between them, the judgment in that action does not preclude later claims between those parties. *See Smith v. Baker*, 380 S.W.2d 725, 726 (Tex. Civ.App.—Waco 1964, writ ref'd n.r.e.); *Green v. City of San Antonio*, 282 S.W.2d 769, 776 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.); *Second Nat'l Bank of Houston v. Fuqua*, 262 S.W.2d 834, 835 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.). However, where a defendant *does* assert a cross-claim against a co-party, they become adverse, and the principles of res judicata apply. The cross-claimant becomes a plaintiff for res judicata purposes, and is required to assert all claims against the cross-defendant arising from the subject matter of the original cross-claim. *Cf.* Restatement (Second) Judgments § 23 (1980) ("Where a defendant interposes a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the rules of bar are applicable to the judgment.").

Getty relies on *Chandler v. Cashaway Building Materials, Inc.*, 584 S.W.2d 950, 954 (Tex.App.—El Paso 1979, no writ), where the court held that res judicata "applies to the cause of action which was actually filed by the plaintiff and not cross-actions which might have been filed by a defendant, unless, of course, the compulsory counterclaim rule is applicable." *See*

*also Swiss Avenue Bank v. Slivka*, 724 S.W.2d 394, 396–97 (Tex.App.—Dallas 1986, no writ). These cases merely reiterate the principle of Rule 97(e) that a party is not required to assert a cross-claim against an otherwise non-adverse party. Neither *Chandler* nor *Slivka* involved a situation where a party asserted some but not all of its cross-claims.

Getty was not required to bring any of its cross-claims against NL in the *Duncan* suit. Once it chose to bring some of those claims, however, it was required under res judicata to bring them all in the same action. Accordingly, we agree with the court of appeals' holding as to this issue.

## B. Getty v. INA and Youell

The court of appeals also held that Getty's claims against INA and Youell, NL's primary and excess insurance carriers, were barred by res judicata. Although INA and Youell were not parties to the *Duncan* suit, the court reasoned that res judicata bars a second suit "against the same parties *or their privies.*" 819 S.W.2d at 910 (emphasis added).

Under Texas law, a former judgment bars a second suit against all who were in "privity" with the parties to the first suit. *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex.1971). There is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined. *See Dairyland County Mutual Ins. Co. of Texas v. Childress*, 650 S.W.2d 770, 773–74 (Tex.1983); *Benson*, 468 S.W.2d at 363. Those in privity with a party may include persons who exert control over the action, persons whose interests are represented by the party, or suc-

---

**6.** If Getty believed that trying all of these claims in the same action would have been prejudicial, it could have moved the trial court to bifurcate the trial under Tex.R.Civ.P. 174(b), which provides: "in furtherance of convenience or to avoid prejudice [the court] may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

Also, if for any reason Getty could not have obtained a just adjudication of its claim against NL under the additional insured provision without the presence of NL's insurers, which as discussed in the next section could not have been joined in the *Duncan* suit, then the trial court could have severed this claim and stayed it until after judgment was rendered on the primary claims.

cessors in interest to the party. *See Dairyland*, 650 S.W.2d at 774.

■ Getty replies that even if INA and Youell were in privity with NL, res judicata would not bar Getty's present claims against them because Getty could not have asserted those claims in the *Duncan* suit. The insurance policies themselves specifically prohibited any claim from being brought against INA or Youell before the insured's liability was reduced to judgment or compromised.[7] We have held that when such "no action" policy provisions exist, "a third party's right of action against the insurer does not arise until he has secured such an agreement or a judgment against the insured." *Great American Ins. Co. v. Murray*, 437 S.W.2d 264, 265–66 (Tex. 1969); *see also State Farm County Mut. Ins. Co. of Texas v. Ollis*, 768 S.W.2d 722, 723 (Tex.1989).

Moreover, Tex.R.Civ.P. 38(c) prohibited Getty from joining INA and Youell in the *Duncan* suit. This rule provides, with respect to the joinder of third parties:

> (c) This rule shall not be applied, in tort cases, so as to permit the joinder of a liability or indemnity insurance company, unless such company is by statute or contract liable to the person injured or damaged.

Rule 38(c) has been held to prohibit the joinder of insurers in situations resembling this case. *See Langdeau v. Pittman*, 337 S.W.2d 343, 355 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.).

Since Getty could not have asserted its present claims against INA or Youell in the *Duncan* suit,[8] it is not now precluded by res judicata from bringing these claims. We accordingly reverse the judgment of the court of appeals affirming the trial court's summary judgment against INA and Youell on the ground of res judicata, and we remand this portion of the cause to the trial court for further proceedings.

### III. Collateral Estoppel

The trial court also granted summary judgment for respondents on the basis of collateral estoppel. The court of appeals did not reach this question.

■ The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit. *Tarter v. Metropolitan Savings & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex.1988), *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984); Restatement (Second) of Judgments § 27 (1980). NL first argues that Getty seeks to relitigate the issue of whether Duncan's accident arose in connection with NL's performance of the purchase order. This issue is important because HB–5357 requires NL to provide insurance for Getty only for losses "arising out of or incident to the performance of the

---

7. The INA General Insurance Policy contained the following condition:

 5. Action Against Company
 No action shall lie against the Company unless ... the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.

 The Youell policy contained the following condition:

 J. LOSS PAYABLE
 . . . . .
 The Assured shall make a definite claim for any loss for which the Underwriters may be liable under this policy within twelve (12) months after ... the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters.

8. This result comports with the Restatement (Second) of Judgments § 51 (1980):

 If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other [NL and its insurers], and an action is brought by the injured person against one of them [Getty's cross-claim], the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
 (1) A judgment against the injured person [Getty] that bars him from reasserting his claim against the defendant in the first action [NL] extinguishes any claim he has against the other person [the insurers] responsible for the conduct unless:
 (a) The claim asserted in the second action is based upon grounds that could not have been asserted [payment under the policy] against the defendant in the first action....

terms of this Order by [NL]...."[9] NL contends that the jury decided this issue adversely to Getty in the *Duncan* case.

 Collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action. *See Price v. Texas Employers' Ins. Ass'n,* 782 S.W.2d 938, 940 (Tex.App.—Tyler 1989, writ ref'd n.r.e.). The jury in the *Duncan* suit found that NL was not negligent and that it placed adequate warnings on the chemicals, but neither the jury nor the trial court expressly found that the accident did not arise out of or incident to NL's performance of the purchase order. NL contends, however, that the phrase "incident to [NL's] performance" in HB–5357 refers only to losses caused by NL's negligence, and thus the jury's answers necessarily equate to a finding that Duncan's accident was not incident to the performance of HB–5357. The court in the *Duncan* case, however, apparently made no finding regarding this question. Also, we do not consider the language necessarily to be as narrow as NL contends. Getty's construction—that an injury is "incident to performance" as long as it results from chemicals delivered by NL under the contract—is also arguable under the literal language of the agreement. The parties have not focused on the proper interpretation of this language in their briefing and argument to this Court,[10] and thus we are unable under the present record to conclude that NL's obligation to provide insurance applied only for accidents caused by NL's negligence. Without such a finding, we cannot conclude

that Getty is attempting to relitigate a factual issue decided by the jury in the *Duncan* case, and NL's collateral estoppel argument must therefore fail.

 NL further argues that Getty is attempting to relitigate a legal issue previously decided in the *Duncan* suit: whether Getty has a right of indemnity from NL. Collateral estoppel also precludes the relitigation of essential issues of law that were litigated and determined in a prior action. *Price,* 782 S.W.2d at 940–41; *Withers v. Republic Nat'l Bank of Dallas,* 248 S.W.2d 271, 282 (Tex.Civ.App.—Beaumont 1952, writ ref'd n.r.e.); Restatement (Second) of Judgments § 27 (1980). It was determined in the *Duncan* suit that Getty had no right of indemnity from NL, but Getty is not attempting to relitigate that issue here. Rather, it is seeking damages for NL's failure to extend insurance coverage to Getty. Although the latter action arose from the same transaction as the former and, with respect to Getty's claim against NL, is barred by res judicata, it is based on a different provision of HB–5357 and does not present the same legal issue. As indicated, collateral estoppel only applies where the *identical* issue was litigated in the prior suit. *Price,* 782 S.W.2d at 940.

For the foregoing reasons, the court of appeals' judgment cannot be affirmed on the basis of collateral estoppel.

### IV. Anti–Indemnity Statute

The Texas Oilfield Anti–Indemnity Statute, Tex.Rev.Civ.Stat.Ann. art. 2212b (now

---

**9.** This limitation expressly appears in the indemnity section of HB–5357, but not in the insurance section. Getty does not contend, however, that NL's obligation to provide insurance extends to risks beyond those associated with performance of the purchase order. Getty pled as follows in its Fourth Amended Petition:

Pursuant to [HB–5357], NL was contractually obligated to obtain and maintain, at NL's cost, liability insurance to protect Getty from liability for personal injuries occurring in connection with the performance of the NL–Getty Contract.

Getty likewise acknowledges in its reply brief to this Court that it must prove "the sale by NL under the contract of the product involved in the Duncan accident."

**10.** NL does cite *Joe Adams & Sons v. McCann Construction Co.,* 475 S.W.2d 721 (Tex.1971), where the Court held that an indemnity agreement requiring a subcontractor to indemnify the general contractor for injuries sustained "through or on account of any act or in connection with the work of the [subcontractor]" did not apply to injuries caused solely by the general contractor's negligence, even though an act of the subcontractor was a contributing cause-in-fact. The holding, however, was based on the express negligence doctrine. As discussed in Section V, *supra,* this doctrine has been held to apply only to indemnity provisions, not to insurance-shifting provisions, and thus *McCann* is not helpful in interpreting the additional insured provision of HB–5357.

codified and amended at Tex.Civ.Prac. & Rem.Code §§ 127.001–.007), provides that an agreement pertaining to an oil or gas well is void if it purports to indemnify a party from loss or liability for damage arising out of its own negligence.[11] Prior to the enactment of Article 2212b in 1973, many oil companies and oil well operators had "hold harmless" agreements with oil well drilling and service contractors. These agreements generally required the contractors to indemnify the operators for losses caused by the negligence of the contractor, and often for the negligence of the operator and third parties as well. Many believed that such agreements placed an undue financial burden on what were perceived to be small contractors with less bargaining power than the operators with whom they were negotiating contracts. *See* HOUSE INTERIM STUDY COMMITTEE ON HOLD HARMLESS AGREEMENTS, REPORT, 63rd Leg., at 3–8 (1973) [hereinafter HOUSE STUDY COMMITTEE]. In 1973, the legislature attempted to cure this perceived inequity by enacting Article 2212b, which prohibits agreements that indemnify a party for its own negligence.

The court of appeals held that under the statute, the "additional insured" provision of HB–5357 is facially invalid because it makes NL indemnify Getty for Getty's own negligence.[12] It reasoned:

[T]he effect of upholding [the provision] would be to allow Getty to avoid liability for its sole negligence. This result ... contravene[s] the statutory goal of prohibiting agreements allowing a party to avoid responsibility for the results of its own negligence.

819 S.W.2d at 914.

 Getty argues that the court of appeals erred because the provision at issue is an "additional insured" provision, and the Anti–Indemnity Statute only applies to indemnity provisions, which are different. Prohibited indemnity provisions make the indemnitor (NL) liable for the indemnitee's (Getty's) negligence. Additional insured provisions, on the other hand, make the insurance-purchaser's insurers (INA and Youell) liable for the loss caused by the insured's (Getty's) negligence. The insurance-purchaser is responsible only for paying the insurance premiums, presumably far less than the actual loss. Moreover, the cost of premiums is certain and exact. Thus, contractors are still protected by the Anti–Indemnity Statute from large and uncertain liabilities caused by an indemnitee's negligence.

Respondents argue that recognizing a distinction between the indemnity and insurance provisions would allow Getty to accomplish indirectly what it otherwise could not achieve directly: avoiding liability for its own negligence. Section 5 of the Anti–Indemnity Statute specifically provides:

Each party to an agreement defined in Section 3 of this Act shall be responsible for the results of his own actions and for the actions of those persons over whom he exercises control.

They contend that if the additional insured provision of this contract is not rendered unenforceable, Getty will be able to evade responsibility for its actions, in contravention of this statutory command.[13]

---

**11.** Section 2 of Article 2212b provides:

[A] covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or mine for any mineral, is void and unenforceable if it purports to indemnify the indemnitee [Getty] against loss or liability for damages arising from either death or bodily injury to persons, or injury to property, or any other loss, damage, or expense arising from either death or bodily injury, injury to property, or loss, damage, or expense, which is caused by or results from the sole or concurrent negligence of the indemnitee [Getty], or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

**12.** This case does not present the question whether the indemnity provision of HB–5357 is void under the terms of the Anti–Indemnity Statute, and we express no opinion on this issue.

**13.** Amicus Curiae International Association of Drilling Contractors, aligned with Respondents, further argues that if a contractor is required to purchase insurance covering the negligence of an operator and third parties, it will be forced to bear significant costs in the form of dramatically increased insurance premiums or, if insurance becomes unavailable, the necessity to self-

NL, in particular, argues that under § 4(c) of article 2212b, the burden of procuring insurance may be shifted only when the insurance supports an obligation to provide indemnity against claims for injury to the contractor's own employees. Because Duncan was an independent contractor working for Getty, and not an NL employee or contractor, this limited exception does not authorize the "insurance shifting" scheme of the contract.

■ We conclude that section 5 of article 2212b simply states the policy behind the prohibition of indemnity agreements, and does not have substantive effect. Section 5, if interpreted as broadly as respondents urge, would prohibit a party from obtaining its own liability insurance, clearly not the intent of the statute.

■ We further conclude that the language of article 2212b applies exclusively to indemnity agreements. Section 4(c) does not prohibit "insurance shifting" schemes that do not fall within its parameters; rather it *permits* certain indemnity agreements if they are supported by liability insurance and meet the section's other requirements. Art. 2212b, § 4(c) (now codified and amended at Tex.Civ.Prac. & Rem.Code § 127.005). The Anti–Indemnity statute does not purport to regulate any agreements for the purchase of insurance unless they are in support of indemnity agreements.

Respondents argue that the additional insured provision of HB–5357 does support the indemnity agreement which follows it. They cite *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 823 (Tex.1972), in which we reasoned that the liability insurance provision of a contract should be construed as assuring performance of an indemnity agreement also contained in the contract.

While we express no opinion as to whether Getty is an additional insured under NL's insurance policies, we agree with the court of appeals that the contract in the instant case is significantly different from that in *Fireman's Fund.* *See* 819 S.W.2d at 912. The indemnity provision in paragraphs 3–4 of HB–5357 is supported by an insurance provision separate from and additional to the additional insured provision in paragraphs 1–2. The last sentence of paragraph 3 provides that "[i]nsurance covering this indemnity agreement shall be provided by Seller." [14] This provision, not the first sentence of paragraph 2, which begins "All insurance coverage carried by Seller ... shall extend to and protect Purchaser," supports the indemnity agreement. Moreover, the additional insured provision requires that NL extend insurance coverage to Getty "whether or not required [by the other provisions of the contract]." Thus, the additional insured provision of the contract does not support the indemnity agreement, but rather is a separate obligation. We disagree with the concurring and dissenting opinion that the contract is susceptible to any other reasonable interpretation. The additional insured provision, which does not support an indemnity agreement, is not prohibited by the language of the Anti–Indemnity Statute.

Respondents also argue that the three other states having oilfield anti-indemnity statutes have not permitted insurance-purchasing agreements like the one in this case.[15] *See Babineaux v. McBroom Rig Bldg. Svc., Inc.,* 806 F.2d 1282, 1284 (5th Cir.1987) (applying Louisiana law); *Nesom v. Chevron U.S.A., Inc.,* 633 F.Supp. 55, 59 (E.D.La.1984); *Amoco Prod. Co. v. Action*

insure, and increased safety risks resulting from the operator's freedom to act negligently.

**14.** As indicated, we express no opinion on the validity of the indemnity agreement of HB–5357, including this supporting insurance requirement.

**15.** Only Texas, Louisiana, New Mexico and Wyoming have anti-indemnity statutes directed particularly at oil and gas operations. *See generally* Battiato & Gilbertson, *The Changing Insurance Market—Who Will Bear the Risks?,* 32 ROCKY MTN. MIN. L. INST. § 17.04 at 17–16 (1986); Owen L. Anderson, *The Anatomy of an Oil and Gas Drilling Contract,* 25 Tulsa L.J. 359, 421–431 (1990).

Other oil and gas producing states, such as Alaska, Arizona, California, and South Dakota, have anti-indemnity statutes that target construction contracts. Battiato & Gilbertson, *supra,* at 15–16.

*Well Serv., Inc.*, 107 N.M. 208, 755 P.2d 52, 55 (1988); *Murray v. Trunkline Gas Co.*, 544 So.2d 28, 32 (La.Ct.App.1989). *Cf. Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1354 (Wyo.1978) (validity of insurance provision not reached, but court expressed doubt that such a provision would be valid).[16] Respondents urge that we follow these jurisdictions, particularly New Mexico, whose oilfield anti-indemnity statute influenced the passage of the Texas statute. *See* HOUSE STUDY COMMITTEE, *supra*, at i, 7.

These cases, however, are not dispositive of the case before us. In *Amoco*, the insurance provision in dispute was directly in support of a prohibited indemnity agreement. 755 P.2d at 53. As discussed, the additional insured provision of HB–5357 is a separate covenant and does not support an indemnity agreement.[17]

The Louisiana cases are distinguishable because that state's Anti–Indemnity statute expressly prohibits additional insured clauses that shift the burden of insurance. La.Rev.Stat.Ann. § 9:2780(G) (West 1986). *See also Babineaux*, 806 F.2d at 1284 n. 2; Owen L. Anderson, *The Anatomy of an Oil and Gas Drilling Contract*, 25 Tulsa L.J. 359, 424 (1990). Thus, the Louisiana statute is broader than the Texas statute, which only prohibits certain indemnity agreements. Tex.Rev.Civ.Stat. art. 2212b § 2 (now codified and amended at Tex.Civ. Prac. & Rem.Code § 127.003); *see also*

John M. Battiato & Joel W. Gilbertson, *The Changing Insurance Market—Who Will Bear the Risks?*, 32 ROCKY MTN.MIN.L.INST. § 17.04 at 17–18 (1986). If our legislature desired to expand the Texas Anti–Indemnity Act to the breadth of the Louisiana statute, it could have done so. Because it did not, this Court should not interpret the statutory language to include such a restriction.

Respondents argue that the practical effect of the additional insured provision in HB–5357 is to indemnify Getty by relieving it of responsibility for its sole negligence, and that it thus violates the intention of the Anti–Indemnity statute. While we do not deny the effect of insurance coverage, we decline to expand the language of our Anti–Indemnity statute to encompass insurance procurement provisions that are not actually indemnity agreements and that do not directly support indemnity agreements. Rather, we construe the language of the statute strictly to permit parties to contract freely with regard to agreements not covered by the statutory language. Thus, the additional insured provision of HB–5357 is not covered by the Anti–Indemnity statute.

## V. Express Negligence Doctrine

 The trial court rendered summary judgment for respondents on the ground that the express negligence doc-

---

**16.** Getty cites no oilfield anti-indemnity statute cases to counter Respondents' position. Getty does, however, note that courts interpreting other types of anti-indemnity statutes have differentiated between indemnity and additional insured provisions. *See, e.g., Voisin v. O.D.E.C.O. Drilling Co.*, 744 F.2d 1174, 1177 (5th Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985) (Longshoremen's and Harbor Workers' Compensation Act § 5(b), 33 U.S.C.A. § 905(b) (1976)); *Kinney v. G.W. Lisk Co.*, 76 N.Y.2d 215, 557 N.Y.S.2d 283, 556 N.E.2d 1090 (1990) (N.Y.Gen.Oblig.Law § 5–322.1 (McKinney 1989) (construction anti-indemnity)); *Bosio v. Branigar Organization, Inc.*, 154 Ill.App.3d 611, 107 Ill.Dec. 105, 506 N.E.2d 996 (1987) (Ill.Rev.Stat. ch. 29, para. 61 (1985) (construction)); *Cone Bros. Contracting Co. v. Ashland–Warren, Inc.*, 458 So.2d 851, 855–56 (Fla. Dist.Ct.App.1984) (Fla.Stat. ch. 725.06 (1977) (construction anti-indemnity)).

We do not believe that the maritime and construction anti-indemnity statutes discussed in these cases are helpful in interpreting our oilfield anti-indemnity statute. The policies behind these foreign statutes do not reflect the concerns of the oil industry in Texas. For example, the Illinois construction anti-indemnity statute, Ill.Rev.Stat. ch. 29, para. 61 (1985), was enacted "to protect the construction worker and the general public from suffering construction-related injuries." *Bosio*, 107 Ill.Dec. at 107, 506 N.E.2d at 998. This policy goal clearly differs from the goal of the Texas oilfield act, which was enacted to protect *contractors* from inequitable indemnification provisions. Tex.Rev.Civ. Stat. art. 2212b § 1 (now codified and amended at Tex.Civ.Prac. & Rem.Code § 127.002).

**17.** The basis for the Wyoming Supreme Court's dicta in *Mountain Fuel* is unclear because the insurance contract was not made part of the record in that case. 578 P.2d at 1354.

trine invalidates the additional insured provision of HB–5357. This common law doctrine, as stated in *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex.1987), provides that:

> [P]arties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms … within the four corners of the contract.

Although the court of appeals recognized that the express negligence doctrine has been applied only to "contractual indemnity provisions," it reasoned as follows:

> Texas courts would undoubtedly extend this limitation to insurance provisions covering the indemnity obligation that purport to protect the indemnitee from the results of its sole negligence.

819 S.W.2d at 914. As discussed above, however, the additional insured provision of HB–5357 does not support an indemnity agreement. As amicus curiae Texas Mid-Continent Oil and Gas Association points out, the express negligence doctrine in Texas has been applied only to indemnity provisions, not insurance-shifting provisions. *See Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724 (Tex.1989); *Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.*, 739 S.W.2d 239 (Tex.1987) (per curiam); *Singleton v. Crown Central Petroleum Corp.*, 729 S.W.2d 690 (Tex.1987) (per curiam); *Whitson v. Goodbodys, Inc.*, 773 S.W.2d 381 (Tex.App.—Dallas 1989, writ denied).

We decline to extend the express negligence doctrine to contractual provisions other than indemnity agreements in this case, and we thus hold that this doctrine does not invalidate the additional insured provision of HB–5357.

### VI. Conclusion

We affirm the judgment of the court of appeals as to Getty's claims against NL. We reverse the judgment of the court of appeals as to Getty's claims against INA and Youell, and remand those claims to the trial court for further proceedings consistent with this opinion. We express no opinion regarding whether Getty is an additional insured under NL's insurance policies with INA or Youell, or the extent of such coverage, if it exists.

Concurring and dissenting opinion by GONZALEZ, J., joined by MAUZY and DOGGETT, JJ.

GONZALEZ, Justice concurring and dissenting.

I agree with the Court that res judicata bars any action by Getty against NL. I also agree that the summary judgment for INA and Youell should be reversed and remanded to the trial court. The Court concludes, however, that paragraph two of the contract is an additional insured provision that does not directly support an indemnity agreement. In so doing, the court takes a contract that is ambiguous and makes a factual determination as to its meaning. For this reason, I cannot join the majority opinion. I would hold that the contract is ambiguous as a matter of law, reverse the judgment of the court of appeals, and remand the cause to the trial court for a trier of fact to determine whether the parties intended paragraph two of HB–5357 to be an additional insured provision or an insurance provision in support of the indemnity agreement.

The pertinent rules of contract construction are set out in *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983):

> If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. Whether a contract is ambiguous is a question of law for the court to decide by looking at the circumstances present when the contract was entered. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. (citations omitted).

This contract is reasonably susceptible to more than one interpretation.[1] Getty contends that paragraph two of HB–5357 is an additional insured provision and does not directly. cover the indemnity agreement, and the anti-indemnity statute was never intended to affect this type of insurance agreement or any other insurance arrangement that is not a direct indemnification. This Court agrees with Getty, relying on the fact that the indemnity provision already contains an insurance procurement provision separate and distinct from the "additional insured" provision; therefore, the indemnity provision already contemplates separate insurance coverage and is not dependent upon the coverages contained in the "additional insured" provision. The Court contends that this argument is strengthened by the languages in the "additional insured" provision which states that NL's insurance shall extend to and protect Getty "whether or not required [by the other provisions of the contract]." This is a reasonable interpretation of these provisions. However, it is not the only reasonable interpretation.

INA and Youell argue that this insurance provision contemplates direct indemnification coverage, obligating NL to contractually indemnify Getty, and thus directly supports an indemnity agreement. This interpretation is also reasonable. Nowhere in HB–5357 is the term "additional insured" or any derivative thereof used. Paragraph one of the contract reads "INSURANCE AND INDEMNITY" and sets out the types and limits of insurance coverage NL is required to have under the contract. Both the provision extending NL's insurance over Getty and the indemnity agreement are set out in this section. The last paragraph then states, "[t]he liability of Seller (NL), as herein provided, shall not be limited by the insurance coverage required of Seller."

In construing a contract, courts should look at the contract as a whole in order to give effect to all the provisions. *Coker*, 650 S.W.2d at 393; *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision will be given controlling effect; rather, all provisions must be considered with reference to the entire writing. *Daniel*, 243 S.W.2d at 393; *Myers v. Gulf Coast Minerals Mgm't Corp.*, 361 S.W.2d 193, 196 (Tex.1962). Taken as a whole, this "INSURANCE AND INDEMNITY" section seems to contemplate that the insurance coverages set out in these provisions, including the so called "additional insured" paragraph, directly cover any potential liability of NL under the indemnity provision.

1. The contract provisions at issue read as follows:
 4. **INSURANCE AND INDEMNITY:** Seller agrees to maintain at Seller's sole cost and expense, from the time operations are commenced hereunder until Order is fully performed and discharged, insurance of all types and with minimum limits as follows, and furnish certificates to Purchaser's Purchasing Department evidencing such insurance with insurers acceptable to Purchaser:
 [The contract then sets out various required insurance and coverage limits required under the contract]
 All insurance coverages carried by Seller, whether or not required hereby, shall extend to and protect Purchaser, its co-owners and joint venturers (if any), to the full amount of such coverages and shall be sufficiently endorsed to waive any and all claims by the underwriters of insurers against Purchaser, its co-owners, joint venturers, agents, employees and insurance carriers.
 Seller shall indemnify, defend and hold harmless Purchaser, its co-owners, joint venturers, agents, employees and insurance carriers from any and all losses, claims, actions, costs, expenses, judgments, subrogations, or other damages resulting from injury to any person (including injury resulting in death), or damage (including loss or destruction) to property of whatsoever nature of any person arising out of or incident to the performance of the terms of this Order by Seller (including but not limited to, Seller's employees, agents, sub-contractors, and others designated by Seller to perform work or services in, about, or attendant to, the work and services under the terms of this Order). Seller shall not be held responsible for any losses, expenses, claims, subrogations, actions, costs, judgments, or other damages, directly, solely, and proximately caused by the negligence of Purchaser. Insurance covering this indemnity agreement shall be provided by Seller.
 The liability of Seller, as herein above provided, shall not be limited by the insurance coverage required of Seller.

Courts should construe contracts in order to give effect to the intention of the parties. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979). In this case the intention of the parties is not clear. Both parties present reasonable and logical interpretations, thus subjecting the contract to two reasonable and acceptable meanings, the determination of which is a question of fact. Accordingly, I would reverse the judgment of the court of appeals and remand to the trial court for a trier of fact to determine the true intent of the parties.[2]

MAUZY and DOGGETT, JJ., join this concurring and dissenting opinion

2. While this Court has determined that an additional insured provision is not covered by the Anti–Indemnity statute, it has left open the question of whether the statute applies to an insurance procurement provision that directly supports an indemnity agreement. Thus, if the trier of fact determines that this provision does support the indemnity agreement, the question

of whether it violates the Anti–Indemnity statute would have to be resolved. Because Section 5 of the statute applicable in this case provides that a party to an oilfield indemnity agreement "shall be responsible for the results of his own actions," Tex.Rev.Civ.Stat. art. 2212b, § 5, I would hold that this agreement is void.