

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00285-CV

---

ANTHONY FERGUSON, D/B/A ANT FARMS, APPELLANT

V.

LOUIS DREYFUS COMPANY COTTON, LLC, D/B/A
ALLENBERG COTTON CO., APPELLEE

---

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CV-1599, Honorable J. Phillip Hays, Presiding

---

May 16, 2025

OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

In the 2017 legislative session, the Texas Legislature planted a new statutory protection for agricultural producers—section 104.003 of the Texas Agriculture Code—intended to take root as a barrier against certain lawsuits tied to acreage contracts. Until now, that statutory shield has largely gone untested in appellate soil. Today, we consider its first application in our Court.

This appeal requires us to interpret the scope and legal effect of section 104.003, which, though succinct, prohibits suits against producers under an acreage contract unless the producer knowingly fails to deliver all of an agricultural product grown. Because this lawsuit fits squarely within the conduct the statute was designed to preclude—and because the defense was properly invoked—we hold the trial court erred in allowing the suit to proceed.

Appellant, Anthony Ferguson, d/b/a ANT Farms ("Ferguson"), appeals a judgment in favor of Appellee, Louis Dreyfus Company Cotton, LLC, d/b/a Allenberg Cotton Co. ("LDC"). He challenges: (1) the trial court's finding LDC's suit was not barred by section 104.003 of the Texas Agriculture Code; (2) the sufficiency of the evidence supporting the trial court's damages award to LDC; and (3) the award of attorney's fees to LDC and the corresponding denial of attorney's fees to Ferguson. We reverse and remand.

## BACKGROUND

In February 2021, Ferguson, a cotton farmer from Shallowater, Texas, doing business as "ANT Farms," entered into an acreage contract with LDC.[1] Ferguson agreed to provide cotton from 1,601 acres of his land specifically identified in the contract, and he estimated the yield of cotton from his land to be 2,639 bales at the time of contracting. The contract also required Ferguson to immediately notify LDC of any changes to his crop yield, and in any case provide notice of crop damage no later than when he informed his

---

[1] The contract was actually presented to Ferguson by his local cotton gin co-op, Maple Co-op Gin, which then forwarded the signed contract to LDC. A face-to-face meeting between Ferguson and LDC representatives never took place prior to execution of the contract. Before the underlying dispute arose, Ferguson communicated with LDC through Maple Co-op Gin and vice versa.

2

insurance. Under the acreage contract's terms, Ferguson would be "responsible for [LDC's] losses resulting from [Ferguson's] failure to timely inform [LDC.]" The contract required "time is of the essence in the performance of this contract." After execution of the contract, while Ferguson's crop was growing, LDC "hedged" against the contract by selling futures contracts at a fixed price on 1,908 bales and then offered a slightly lower fixed price to Ferguson. This protected both LDC and Ferguson against fluctuations in the price of cotton during the period in which Ferguson was growing his crop.

Unfortunately, in June 2021 a hailstorm damaged or destroyed over seventy-five percent of Ferguson's cotton crop. Ferguson notified his insurance agent of the damage in August, but did not inform LDC, which he was required to do under the terms of the acreage contract.[2] Ferguson's insurance agent finally notified LDC in October of the damage to the crop. In response to the news, LDC lifted its hedge—i.e., liquidated its futures contracts—on only 900 of the 1,908 bales in its original hedge, and then lifted the hedge on the remainder in January 2022. Ferguson delivered the surviving crop from his land, which amounted to 391 bales. However, due to rising cotton prices and its obligation to deliver cotton under the futures contracts, LDC suffered losses.

LDC sued Ferguson under the notice provision of their acreage contract, claiming Ferguson's failure to timely notify LDC caused it to suffer losses. Ferguson initially responded with a plea to the jurisdiction, arguing the suit was barred by the Producer Protection Act ("PPA").[3] Anticipating Ferguson's argument, LDC filed a declaratory

---

[2] Maple Co-op Gin also served as Ferguson's insurance agent.

[3] TEX. AGRIC. CODE ANN. §§ 104.001–104.003.

judgment action contemporaneously with its original petition, requesting the trial court declare the statute unconstitutional and unenforceable. The trial court, after a hearing, denied both the declaratory judgment and the plea to the jurisdiction, finding the statute to be constitutional but inapplicable to the breach of notice action brought by LDC. Ferguson subsequently filed a motion for summary judgment based on the PPA as an affirmative defense, which was also denied. By the terms of the acreage contract, the parties waived their respective rights to a jury and proceeded to a bench trial. Ferguson maintained his position the PPA barred LDC's suit at trial.

At the conclusion of the trial, the court rendered judgment in favor of LDC, awarding it damages in the difference between the expected yield from Ferguson's land and the actual yield, and multiplying this figure by the difference between the price of cotton at the time LDC unwound its hedge position initially in October 2021 and when it unwound the rest of its position in January 2022. The court also awarded attorney's fees to LDC under the prevailing party provision of the contract.

Ferguson filed a request for findings of fact and conclusions of law, which the trial court provided.[4]

## APPLICABLE LAW

"Acreage contract" is defined under the PPA as:

[A] contract that requires a producer to deliver to a purchaser all of the production of a specified agricultural product grown on land described in the contract, unless clearly and conspicuously stated otherwise in the contract's language. The term does not include a contract that requires a producer to deliver a specified quantity of an agricultural product.

---

[4] The trial court did not state its reasoning as to why it believed the PPA was inapplicable to the suit brought by LDC.

Tex. Agric. Code Ann. § 104.001(1).

The PPA defines "[p]roducer" as "a person who produces an agricultural product and sells the product under an acreage contract or a quantity contract." § 104.001(2). "Purchaser" is defined as "a person who purchases an agricultural product under an acreage contract or a quantity contract." § 104.001(3).

Additionally, the PPA provides "[a] purchaser may not file suit against a producer under an acreage contract unless the producer knowingly fails to deliver to the purchaser all of an agricultural product grown on specified land as provided by the acreage contract." § 104.003.

## STANDARD OF REVIEW

We review issues of statutory construction de novo. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (citations omitted). Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language. *Id*. If that language is unambiguous, we interpret the statute according to its plain meaning. *Id*. We apply the common meaning of the words of a statute "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Tex. Tech Univ. Health Scis. Ctr. - El Paso v. Niehay*, 671 S.W.3d 929, 939 (Tex. 2023) (quoting *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019)). We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted. *Lippincott*, 462 S.W.3d at 509.

ANALYSIS

**ISSUE ONE—APPLICATION OF TEX. AGRIC. CODE. ANN. § 104.003**

Ferguson's first issue is dispositive of this appeal. He complains the trial court erred by finding section 104.003 of the PPA did not bar LDC's suit. LDC admits and did not contest Ferguson delivered all of the cotton on the contracted acreage, and therefore, he concludes, LDC could not prevail on its breach of contract claim. LDC responds by arguing Ferguson's interpretation of the statute is absurd and the trial court properly found the Act inapplicable to its claims.

Throughout the proceeding in the trial court, Ferguson asserted section 104.003 in various procedural vehicles, including:

- a Rule 91a motion;

- a plea to the jurisdiction;

- summary judgment; and

- an affirmative defense at trial.[5]

LDC insists we must only consider his plea to the jurisdiction, as his appeal raises the trial court's failure to apply section 104.003. "The failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law." *City of Desoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009) (quoting *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004)). If the section 104.003 prohibition on filing suit is

---

[5] The trial court also took judicial notice of Ferguson's previously filed motion for summary judgment at trial.

jurisdictional, the trial court was deprived of its power to hear the case in the first place; however, if the requirement is instead an affirmative defense, the trial court retained the power to render judgment. Ferguson does not specify what the proper procedural posture for the assertion of the statute is, and we must therefore make a preliminary determination whether the statute is jurisdictional or creates an affirmative defense.

We begin with the statutory language, presuming "that the Legislature did not intend to make the [provision] jurisdictional; a presumption overcome only by clear legislative intent to the contrary." *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010) (quoting *City of DeSoto*, 288 S.W.3d at 394). Here, the word "jurisdiction" does not appear anywhere in the statute, and there is no clear intention on the face of the statute, nor can we find any intention in the legislative history to make the prohibition to filing suit jurisdictional. In general, whether a plaintiff has complied with statutory prerequisites implicates the right to relief, not the jurisdiction of the court. *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, 694 S.W.3d 752, 759 (Tex. 2024).[6] Thus, the failure to comply, as in this case, is a question of liability, and is an affirmative defense which must be pleaded. TEX. R. CIV. P. 94; *see also City of New Braunfels v. Allen*, 132 S.W.3d 157, 164 (Tex. App.—Austin 2004, no pet.) ("Failure to comply with a statute of limitations constitutes a plea in bar, or an affirmative defense.").[7] We hold the

---

[6] *Compare id*. at n.33 (Tex. 2024) ("In suits against the government, however, all statutory prerequisites to suit are jurisdictional requirements.") (citing TEX. GOV'T CODE ANN. § 311.034).

[7] *See also Highway Contractors, Inc. v. W. Tex. Equip. Co.*, 617 S.W.2d 791, 794 (Tex. Civ.—Amarillo 1981, no writ).("An affirmative defense is a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings."); *Gorman v. Life Ins. Co. of N. A.*, 811 S.W.2d 542, 546 (Tex. 1991) ("Pleading an affirmative defense permits introduction of evidence which does not tend to rebut the factual propositions asserted in the plaintiff's case, but which seeks to establish an independent reason why the plaintiff should not recover.").

prohibition on the filing of suit found in section 104.003, if any, is an affirmative defense, not a jurisdictional requirement, and the trial court had jurisdiction to hear the matter. Thus, the trial court properly denied Ferguson's plea to the jurisdiction. Because the matter went to trial on the merits, Ferguson cannot appeal the denial of his summary judgment; instead, he had to establish his affirmative defense with evidence. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966) (denial of a motion for summary judgment may not be challenged on appeal from final judgment following trial); *accord Hernandez v. Ebrom*, 289 S.W.3d 316, 326 (Tex. 2009); *Tindall v. Jones-Everett Mach. Co.*, No. 07-97-0016-CV, 1998 Tex. App. LEXIS 4999, at *5 (Tex. App.—Amarillo Aug. 13, 1998, no pet.) (mem. op.) ("Where a point is based on an alleged error of the trial court in overruling a motion for summary judgment, it is not a point to be considered on appeal from the judgment rendered following a trial of the merits of the case."); *UPS v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

At trial, Ferguson—through his testimony—provided uncontroverted evidence he delivered all of the viable crop from his contracted acreage to LDC. LDC's representative did not contest whether Ferguson delivered all of his crop, nor did he claim Ferguson knowingly failed to deliver all of his crop. LDC also admitted in its petition its claim was based solely on breach of the notice provision in the acreage contract, not on any failing on Ferguson's part to deliver cotton. Therefore, we also hold Ferguson established his affirmative defense under the PPA at trial. This leaves us with the interpretation and applicability of the statute to the case at bar.

The statutory language at issue is unambiguous and is not susceptible to more than one reasonable interpretation. The plain language of section 104.003 prohibits suit

8

for breach of an acreage contract against a producer—Ferguson in this case—"unless the producer knowingly fails to deliver to the purchaser all of an agricultural product[.]" § 104.003. LDC also agrees this is the plain meaning of the statute. Nonetheless, it urges "the statute cannot reasonably be construed as precluding actions for [breaches other than delivery]; specifically, an action for a contractual breach of the notice provision. To hold otherwise would absurdly render the notice provision immaterial."

To reconcile this "absurdity," LDC quotes *In re Horizon* and proposes "a statute invalidating [one clause of a contract] does not relieve a party of a separate duty [in the contract.]" 470 S.W.3d 452, 468 (Tex. 2015) (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 804 (Tex. 1992)). The quoted language is dicta, as *In re Horizon* did not have at issue contract provisions rendered invalid by statute. Further, the statute at issue here does not merely invalidate a certain provision of the acreage contract, it conditionally prohibits the filing of suit in its entirety. *In re Horizon* is simply inapplicable.[8] Nonetheless, we must examine the language of the PPA to determine if, as LDC proposes, the plain interpretation results in an absurdity.

We read unambiguous statutes as they are written, not as they make the most policy sense. *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013). If a statute is worded clearly, we must honor its plain language, unless that interpretation would lead to absurd results. *Id*. The term "suit" as used in the statute is not limited to

---

[8] Even *Getty Oil*, the case quoted by *Horizon*, is inapplicable. *Getty Oil* examined the Texas Oilfield Anti-Indemnity Act and determined, although the act made certain indemnity provisions in an oil and gas contract invalid, the complaining party was still bound by a separate provision to obtain insurance. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 127.001–127.007; *Getty Oil Co.*, 845 S.W.2d at 804. Unlike the PPA, the Texas Oilfield Anti-Indemnity Act deals with the enforceability of certain provisions and does not present a bar to the filing of suit in the first place. Therefore, both *Horizon* and *Getty Oil* are inapplicable to the present matter.

causes of action concerning only the delivery of agricultural products. Nor is the term

"acreage contract" limited to only language in the contract pertaining to the delivery of

products. LDC suggests reading the statute more broadly leads to an "absurd" result—

the curtailing of its right to sue for breaches under the acreage contract unrelated to

delivery of cotton. But this was the purpose of the statute, as demonstrated by the bill

analysis in the House of Representatives during the passage of the Act:

> Informed observers note that the practice of agriculture and the related industry can be unpredictable and that farmers and producers are often unable to accurately predict crop yields, which has led to certain acreage contract disputes pitting large multinational agricultural product buyers with dedicated litigation budgets against much smaller producers and farmers.
>
> * * *
>
> The bill prohibits a purchaser from filing suit against a producer under an acreage contract unless the producer knowingly fails to deliver to the purchaser all of an agricultural product grown on specified land as provided by the acreage contract.

House Comm. on Agriculture & Livestock, Bill Analysis, Tex. H.B. 338, 85th Leg., R.S.

(2017).[9]

The particular ill the Legislature intended to prevent was lawsuits filed by large

multinational corporations against farmers under acreage contracts because the crop

---

[9] The bill analysis also shows the changes between the initially proposed bill and the bill accepted by the subcommittee. Originally, section 104.003 contained the following language:

> (a) A purchaser may request from a producer information supporting the producer's estimate of production under an acreage contract.
>
> (b) A purchaser may not file suit against a producer based on inaccuracies in the producer's estimate of production under an acreage contract unless the purchaser makes a written request for information under Subsection (a) not later than the 30th day after the date the acreage contract is executed.

Id. However, this language was dispensed with in favor of the current language of section 104.003. Id.; TEX. AGRIC. CODE ANN. § 104.003.

yields from the farmers' lands were not accurately predicted.  The case at bar appears to reflect exactly the scenario the Legislature contemplated:  Ferguson, a small farmer, is being sued by a large multinational company, LDC, in an attempt to recover LDC's losses resulting from a shortfall in crop yield. Interpreting the statute as barring all lawsuits concerning acreage contracts which do not meet the "knowingly fails to deliver" requirement does not yield an absurd result, but rather embraces the intention of the Legislature.  While we will not construe a statute's language to produce "patently nonsensical results," the absurdity bar "is high, and should be," because "mere oddity does not equal absurdity." *City of Forth Worth v. Rylie*, 602 S.W.3d 459, 467 (Tex. 2020) (quoting *Combs*, 401 S.W.3d at 630).  We cannot say the result is absurd as a matter of law.[10]

Ferguson, by having the trial court take judicial notice of his summary judgment arguments and presenting unchallenged evidence he delivered all the crop from his acreage, established his affirmative defense that LDC's lawsuit was barred by statute. Therefore, LDC could not prevail on the merits as a matter of law.  The trial court erred by entering judgment for LDC, and its judgment is reversed.  We sustain Ferguson's first issue.

---

[10] Although our interpretation of the PPA is a question of first impression, the question itself is not unique.  The Legislature has previously passed other statutes invalidating contractual provisions, and none of these have been held to be "absurd" merely because they made previously enforceable contract provisions unenforceable.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.070 (making void a contractual term limiting limitations period to less than two years); TEX. BUS. & COMM. CODE ANN. § 27.01 (statute of frauds requiring certain contracts to be in writing to be enforceable); TEX. INS. CODE ANN. § 101.201(a) (insurance contract by an unauthorized insurer is unenforceable).

Because we have found the trial court erred and its judgment should be reversed, we do not reach Ferguson's second issue challenging the sufficiency of the evidence. TEX. R. APP. P. 47.1.

**ISSUE THREE—ATTORNEY'S FEES**

The third issue Ferguson complains of is the award of attorney's fees to LDC. Because we have found LDC could not prevail on the merits under the PPA, we necessarily find the award of attorney's fees to LDC to be in error. Moreover, the parties' acreage contract contains a prevailing party clause, which awards attorney's fees to the prevailing party. Ferguson's successful defense of the suit necessarily makes him the prevailing party. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653–56 (Tex. 2009). We sustain Ferguson's third issue, and we remand this matter to the trial court for a determination of Ferguson's attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 560 (Tex. 2019).

**CONCLUSION**

The trial court's judgment is reversed, and we remand this matter to the trial court for further proceedings in accordance with this opinion. TEX. R. APP. P. 43.2, 43.3.

Alex Yarbrough
Justice