In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00093-CV


______________________________




PINEBROOK PROPERTIES, LTD., Appellant



V.



BROOKHAVEN LAKE PROPERTY OWNERS ASSOCIATION, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 2000-249




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Pinebrook Properties, Ltd., Pinebrook Properties Management, L.L.C., and A. C.
Musgrave, Jr. (Pinebrook) appeal the trial court's judgment providing various relief for the
different parties. The conflict embodied in this litigation is the culmination of a long and
complicated history, including two prior suits resulting in appeals to this Court. The case
currently before us (Musgrave III) is the result of the consolidation by the trial court of a suit
filed in the year 2000 by Pinebrook Properties against Brookhaven Lake Property Owners
Association and counterclaims by the Association and various lot owners (Owners)
remaining after they were severed from a 1997 lawsuit. The other claims from the 1997
lawsuit were the subject of a recent appeal to this Court, which were decided in Musgrave
v. Owen, 67 S.W.3d 513 (Tex. App.-Texarkana 2002, no pet.) (Musgrave II).

 Pinebrook brings eight issues in this appeal: 1) whether the trial court erred by
denying, on grounds of res judicata and collateral estoppel, claims for injunctive relief
sought by Pinebrook Properties against the Association; 2) whether the trial court erred in
finding Pinebrook Properties and Pinebrook Management are the alter egos of Musgrave;
3) whether the trial court erred by rendering judgment for the Association in the capacity
in which it sued; 4) whether the trial court erred by concluding that Pinebrook has no
authority to regulate property which it owns and that the Association has authority to
regulate that same property; 5) whether the trial court erred by finding an implied
dedication of a roadway constructed on property owned by Musgrave or Brookhaven
Retreat, Inc.; 6) whether the Association should have been awarded damages for work it
chose to perform on the lake and roadways in the Brookhaven in the Pines Addition; 7)
whether the trial court erred by granting any injunctive relief to the Owners against
Pinebrook; and 8) whether the trial court erred by awarding attorney's fees and expenses
to the Association under the Uniform Declaratory Judgments Act (1) when the Association did
not plead for attorney's fees under the Act. See Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997).

 On May 9, 2000, Pinebrook Properties, the owner of the common areas in a
subdivision in Wood County known as the Brookhaven in the Pines Addition, filed this suit
against the Association in Cause Number 2000-249. Pinebrook Properties sought
injunctive relief, declaratory judgment, monetary damages for trespass, and attorney's
fees. On February 8, 2001, the trial court severed a partial summary judgment in Cause
Number 98-420, on which we ruled in Musgrave II, 67 S.W.3d 513. The trial court
consolidated all counterclaims from Cause Number 98-420 with Cause Number 2000-249,
which is now before this Court in Musgrave III. 

 Musgrave succeeded three other owners as the owner of certain real property in the 
Brookhaven in the Pines Addition. He purchased the lake, the roadways serving the lots,
and some forested recreational property in the addition. The lot owners enjoy exclusive
rights to hunt, fish, and recreate on the recreational property and the lake, and to use the
roadways for ingress and egress. Anderson v. McRae, 495 S.W.2d 351, 355 (Tex. Civ.
App.-Texarkana 1973, no writ).

 In December 1998, Pinebrook Properties, a Texas limited partnership, succeeded
Musgrave's interest in the lake, roadways, and recreational property. Pinebrook
Management, a Texas limited liability company, is the general partner of Pinebrook
Properties. In this case (Musgrave III), Pinebrook Properties filed suit seeking injunctive
relief from the trial court to stop the Association from working on the roadways and lake,
and then billing Pinebrook. The Owners, the appellees in Musgrave III, include a number
of people who were not parties to the first suit involving the Brookhaven in the Pines
Addition, which we decided in Musgrave v. Brookhaven Lake Prop. Owners Ass'n, 990
S.W.2d 386 (Tex. App.-Texarkana 1999, pet. denied) (Musgrave I). As counterplaintiffs
in Musgrave III, the Owners sought injunctive relief, declaratory judgment, and monetary
relief against Pinebrook Properties, Pinebrook Management, and Musgrave. They contend
Pinebrook Properties and Pinebrook Management are merely alter egos of Musgrave, who
transferred his interest in the property to Pinebrook Properties in December 1998. 

 To better understand the issues in this appeal (Musgrave III), a more detailed review
of the events and actions occurring in Musgrave I and Musgrave II is helpful. In Musgrave I,
Brookhaven Lake Property Owners Association and six individual lot owners (Musgrave I
plaintiffs) filed suit against Musgrave and others claiming a restrictive covenant obligated
Musgrave to perform maintenance on the roadways and lake for the benefit of all the lot
owners in the subdivision and requesting 1) permanent injunctions enjoining defendants
from closing a roadway, promoting and allowing recreational use of the property by paying
customers, and timbering in the recreational areas without following reasonable restrictions
to be established by the court, as well as 2) damages to reimburse Musgrave I plaintiffs for
funds expended on the maintenance of the roadways and lake. The Musgrave I plaintiffs
asserted that the issue of obligation was established in a previous suit, Anderson, 495
S.W.2d 351, and that Musgrave was barred from denying the obligation by collateral
estoppel. 

 Musgrave presented several counterclaims in Musgrave I seeking: 1) a declaratory
judgment that he had no affirmative duty to maintain the roadways and lake in the
subdivision, claiming the duty did not run with the land; 2) a declaratory judgment that
guests of Musgrave's retreat may use the lake and recreational property, asking the court
to determine the requirements that had to be met in order for a guest to be considered
"accompanied" by a lot owner, including the maximum number of guests who may use the
land at the same time; 3) a declaratory judgment that implementation of the Forest
Resource Management Plan was a reasonable use of the recreational areas covered by
that plan; and 4) a declaratory judgment that Robert Owen's actions in maintaining a water
line on Musgrave's property was a violation of Musgrave's property rights. 

 The Musgrave I plaintiffs asserted special exceptions to Musgrave's counterclaims,
arguing that not all necessary parties were present in the suit. There was nothing in the
record to indicate that the court ruled on these special exceptions or that the counterclaims
were abandoned. We therefore assumed the counterclaims were live at the time of
judgment. 

 The trial court granted judgment for the Musgrave I plaintiffs, permanently enjoining
Musgrave 1) from closing the proposed roadway; 2) from permitting guests of the retreat
who were not lot owners to use certain areas; 3) from interfering with the exclusive rights
of the lot owners to use the lake, roadways, and hunting and recreational areas in the
addition; 4) from timbering for commercial purposes; and 5) from implementing the Forest
Resource Management Plan, or any similar plan, for the commercial harvesting of trees. 
The judgment also awarded the plaintiffs damages to compensate them for funds
expended on maintenance that the court found Musgrave had a duty to perform. The
judgment stated that all relief not expressly granted was denied. Therefore, we assume
the counterclaims, although not explicitly mentioned in the judgment, were denied. 

 This Court affirmed the judgment, in part, in Musgrave I. We affirmed the trial
court's determination that Musgrave was required by the covenants running with the land
to maintain the roadways, lake, and recreational property, but reversed injunction 5) above
because it referred to a document not made part of the order. We reversed the portion of
the award for damages that were barred by the statute of limitations and reformed the
award of attorney's fees as excessive.

 In the second suit, Musgrave II, Musgrave appealed the granting of summary
judgment in favor of the Owners and some of the lot owners, dismissing his claim for
declaratory relief regarding certain rights and responsibilities under a restrictive covenant. 
Musgrave v. Owen, 67 S.W.3d 513. In Musgrave II, Musgrave sought 1) a declaration that
the defendants may not operate a dump facility on the recreational property owned by the
plaintiff because the property is subject only to the rights of recreational use by the lot
owners; 2) a declaration that Musgrave, as owner of the recreational property, is the sole
person authorized to create rules and regulations regarding the use of the recreational
property; 3) a declaration that neither the Association nor any lot owner other than
Musgrave is authorized to take any action regarding the maintenance, repairs,
improvements, modifications, or alterations of the recreational property, including but not
limited to the roadways, lake, and dam, without first obtaining Musgrave's consent; 4) a
declaration that Musgrave is authorized to install speed control devices across the
roadways within the subdivision property for safety purposes; 5) a declaration specifying
the nature and extent of Musgrave's obligation, if any, to maintain the roadways and lake
within the recreational property; 6) a declaration that defendants are not authorized to
utilize water in the lake for any purpose other than recreation and a further declaration that
the current use of water by certain lot owners is unauthorized; 7) attorney's fees; 8) costs
of suit; and 9) other entitled relief. 

 In Musgrave II, the Owners moved for summary judgment, arguing that Musgrave's
claims were barred by res judicata because of the proceedings in Musgrave I. Summary
judgment proof in Musgrave II consisted only of the final live pleadings and the final
judgment in Musgrave I. The trial court granted summary judgment on the ground of
res judicata. We reversed and remanded, holding that, although the claims arose out of
the same transaction that was the subject matter of the prior claims in Musgrave I, the
movants did not provide summary judgment proof that Musgrave's claims in Musgrave II
were mature during Musgrave I. Musgrave v. Owen, 67 S.W.3d at 522.

 In Musgrave III, Pinebrook Properties sought 1) a temporary and permanent
injunction to enjoin further work by the Association on the roadways, lake, and recreational
property; 2) a declaratory judgment that Pinebrook Properties, not the Association, is the
only entity authorized to perform such work; 3) a judgment in damages against the
Association for the trespass it committed while performing work on the roadways, lake, and
recreational property of Brookhaven in the Pines; 4) reasonable and necessary attorney's
fees; 5) Pinebrook Properties' costs of suit; and 6) prejudgment and postjudgment interest
at the highest rate allowed by law. The Owners sought 1) injunctive relief, 2) declaratory
judgment, 3) monetary damages, and 4) attorney's fees.

 The trial court rendered judgment in favor of the Owners. The trial court, in its
amended findings of fact and conclusions of law, found 1) Pinebrook's claims are barred
by the doctrine of res judicata through the compulsory counterclaim requirement in prior
Cause Number 94-395 (Musgrave I), and that Pinebrook therefore take nothing in this suit;
2) Pinebrook's claims are barred by the doctrine of collateral estoppel, and that Pinebrook
therefore take nothing in this suit; 3) Pinebrook Management and Pinebrook Properties are
alter egos of Musgrave, and that Musgrave and/or any alter ego of Musgrave, his agents,
servants, and/or employees have no control over the lake and recreational areas located
in the Brookhaven in the Pines subdivision, and are without authority to promulgate rules
and regulations regarding the lake and property located in the Brookhaven in the Pines
subdivision, as such action has and will interfere with the property owners' exclusive rights
to the use and enjoyment of said lake, dam, roadways, and recreational areas; 4) all
roadways impliedly dedicated as public roads shall remain open to the public and the lot
owners, and such roadways include, but are not limited to, all existing roadways located
in the Brookhaven in the Pines subdivision; that the lot owners of Brookhaven in the Pines
subdivision, as well as the public, are entitled to and shall have a prescriptive easement
as to the said roadways; 5) Pinebrook take nothing against the Owners; that Pinebrook is
responsible for the maintenance of the lakes, dam, recreational areas, and roadways
located in the Brookhaven in the Pines subdivision, as previously ordered by the trial court;
that Pinebrook is responsible for the debts incurred by the Association for the necessary
maintenance of said lake, recreational property, and roadways; that the amounts expended
by the Association were reasonable and necessary for the preservation of the roadways,
lake, and recreational property; and that the Association is entitled to reimbursement in the
amount of $11,910.08; 6) the Association is entitled and has authority to promulgate and
enforce rules and regulations which protect the property owners' exclusive rights to the use
and enjoyment of the said lake, dam, roadways, and recreational areas; 7) the Owners
have no adequate remedy at law for the losses and injuries, both actual and threatened,
and that such injuries and losses are continuing and irreparable; the rights involved are
unique and irreplaceable, so that it is impossible to accurately measure, in monetary terms,
the damages caused and to be caused by Pinebrook's conduct; and that the losses to the
Owners from Pinebrook's conduct are likely to exceed the financial worth of Pinebrook, so
as to prevent any adequate compensation for the Association, even if money damages
were a sufficient remedy; and 8) that under the Uniform Declaratory Judgments Act, the
Association is entitled to recover reasonable and necessary attorney's fees and costs, and
that in order to protect and preserve the rights of the Association, and to prepare and
defend this suit, it was necessary for the Association to secure the services of an attorney,
and that attorney's fees in the amount of $12,527.50 are reasonable and necessary. 

 In its final judgment, the trial court declared that "A. C. Musgrave, Jr., Pinebrook
and/or Pinebrook Management and Pinebrook Properties, Ltd., and any agents, servants,
alter egos and/or employees" have no authority, directly or indirectly, to promulgate rules
regarding the lake, Brookhaven in the Pines subdivision, or the dam, recreational property,
forested areas, and roadways contained in the subdivision. Additionally, the trial court
permanently enjoined such persons and entities from 1) further interfering with
replacement garbage dumpsters at the garbage collection site on recreational property
located in the subdivision; 2) allowing wake-producing watercraft and recreational vehicles
to be used by lot owners and guests of lot owners on the recreational property, roadways,
lake, and dam contained in the Brookhaven addition, contrary to rules established by the
Association; 3) allowing use of the lake and dam to anyone, other than lot owners and their
accompanied guests, as previously ordered by the court; 4) installing speed control bumps
on roadways contained in the subdivision and directing them to remove those speed
control bumps already installed; 5) lowering the level of the lake without consent from and
coordination with the Association; 6) promulgating rules and regulations regarding the
subdivision which would interfere with the lot owners' exclusive rights to enjoy the lake,
dam, recreational areas, and roadways; 7) closing any roadway of the subdivision or
otherwise interfering with the lot owners' use and enjoyment of roadways located in the
subdivision or accessing the subdivision; and 8) interfering with the exclusive rights of the
lot owners of Brookhaven to use the lake, dam, roadways, and recreational areas. 

 The trial court further adjudged the Association recover from Musgrave (2) judgment
for: $11,910.08 as reimbursement for amounts expended for the necessary maintenance
of the lake, dam, and roadways; $12,527.50 in attorney's fees, plus $5,000.00 in attorney's
fees through appeal to the court of appeals, and an additional $5,000.00 through appeal
to the Texas Supreme Court; interest at the legal rate per year on the total judgment from
the date of judgment until paid; and costs of court.

 In its first point of error, Pinebrook contends the trial court erred in finding Pinebrook
Properties' claims are barred by the doctrine of res judicata. Pinebrook contends the trial
court erred in finding its claims arise from the same transaction which formed the basis of
Cause Number 94-395 (Musgrave I). The question whether res judicata applies in a given
instance is a mixed question of law and fact. When the trial court decides a matter
involving both factual determinations and legal conclusions, appellate courts generally use
an abuse of discretion standard of review. Pony Express Courier Corp. v. Morris, 921
S.W.2d 817, 820 (Tex. App.-San Antonio 1996, no writ). In applying this standard, we
defer to the trial court's factual determinations, as long as the record properly supports
them, and we review its legal determinations de novo. Id. (citing Walker v. Packer, 827
S.W.2d 833, 839-40 (Tex. 1992)). Here, the parties do not dispute any factual issue. 
Because the only issues presented for review involve purely legal determinations, the
proper standard of review is de novo. See Walker, 827 S.W.2d at 840. 

 The doctrine of res judicata, or claims preclusion, prevents the relitigation of a claim
or cause of action that has been finally adjudicated, as well as all related matters that, with
the use of diligence, could or should have been litigated in the prior action. Compania
Financiara Libano v. Simmons, 53 S.W.3d 365, 367 (Tex. 2001); Barr v. Resolution Trust
Corp., 837 S.W.2d 627, 631 (Tex. 1992); Musgrave v. Owen, 67 S.W.3d at 519. The bar
of a claim by res judicata requires proof of the following elements: 1) a prior final judgment
on the merits by a court of competent jurisdiction; 2) identity of parties or those in privity
with them; and 3) a second action based on the same claims that were raised or could
have been raised in the first action. Amstadt v. United States Brass Corp., 919 S.W.2d
644, 652 (Tex. 1996).

 Res judicata only applies to the cause of action filed by the plaintiff, not to the
counterclaim which might have been filed by the defendant, unless the compulsory
counterclaim rule is applicable. Lesbrookton, Inc. v. Jackson, 796 S.W.2d 276, 281 (Tex.
App.-Amarillo 1990, writ denied). A compulsory counterclaim is defined as any
counterclaim 1) within the trial court's jurisdiction, 2) not the subject of a pending action,
3) which is mature when the pleading is filed, 4) arising out of the same transaction or
occurrence as the opposing party's claim, and 5) not requiring for adjudication the
presence of parties over whom the court cannot obtain jurisdiction. Tex. R. Civ. P. 97(a). 
Res judicata applies only to adverse parties. Getty Oil Co. v. Ins. Co. of N. Am., 845
S.W.2d 794, 800 (Tex. 1992). Where a defendant asserts a cross-claim against a coparty,
they become adverse and the principles of res judicata apply. The cross-claimant
becomes a plaintiff for res judicata purposes and is required to assert all claims against the
cross-defendant arising from the subject matter of the original cross-claim. Id.

 Texas follows the transactional approach to res judicata in determining what
permissible claims should have been brought in a prior action. Barr, 837 S.W.2d at 630-31.

 A final judgment extinguishes the right to bring other suits on the transaction
or series of transactions involved in that litigation. . . . In determining
whether the transaction is the same, we consider and weigh whether the
facts are related in time, space, origin, or motivation; whether they form a
convenient trial unit; and whether their treatment as a trial unit conforms to
the parties' expectations or business usage. 


Lone Star Partners v. NationsBank Corp., 893 S.W.2d 593, 597 (Tex. App.-Texarkana
1994, writ denied). The transactional approach requires courts, in order to determine
res judicata, to examine the factual bases, not the legal theories, presented in the cases. 
See Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc., 921 S.W.2d 254, 260 (Tex.
App.-Houston [1st Dist.] 1995), modified on other grounds & remanded, 962 S.W.2d 507
(Tex. 1998). The main concern is whether the cases share the same nucleus of operative
facts. See id. 

 Once Musgrave raised a counterclaim in Musgrave I and put himself and his
successors in interest in the posture of a plaintiff, he was required by both res judicata and
Tex. R. Civ. P. 97(a) to bring all mature causes of action arising from the same set of facts
and circumstances. See Dennis v. First State Bank, 989 S.W.2d 22, 26 (Tex. App.-Fort
Worth 1998, no pet.); Amstadt, 919 S.W.2d at 652-53 (The doctrine of res judicata creates
an exception to this rule by forbidding a second suit arising out of the same subject matter
of an earlier suit by those in privity with the parties to the original suit. People can be in
privity in at least three ways: 1) they can control an action even if they are not parties to
it; 2) their interests can be represented by a party to the action; or 3) they can be
successors in interest, deriving their claims through a party to the prior action.). While
Pinebrook acknowledges that Musgrave I and Musgrave III involve the same real property,
the same restrictive covenants, and parties who, though not identical, are similarly situated,
it contends the claims in Musgrave III do not arise from the same transaction as those
claims raised in Musgrave I.

 Where the claims arise from the same accident or seek to recover for the same
injuries, they have been found to share the same nucleus of operative facts despite the fact
that one claim may require proof of facts not required for the other claim. See Getty Oil
Co., 845 S.W.2d at 802 (involved same transaction as suit arising from same accident,
involved same contract provision, and sought same relief as claims in prior action);
S. County Mut. Ins. Co. v. Ochoa, 19 S.W.3d 452, 467 (Tex. App.-Corpus Christi 2000,
no pet.) (both contract and Stowers (3) claims should have been brought together because
both involved same accident and a claim for compensation, requiring only additional
showing of negligence for not settling within policy limits). 

 Where there is a legal relationship, such as under a lease, a contract, or a marriage,
all claims arising from that relationship will arise from the same subject matter and be
subject to res judicata. See Weiman v. Addicks-Fairbanks Road Sand Co., 846 S.W.2d
414, 419 (Tex. App.-Houston [14th Dist.] 1992, writ denied) (core facts common to all
claims regarding continued operation of landfill after lease expired; combining claims would
be consistent with achieving comprehensive conclusion to business relationship); see also
Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993) (resolving both tort and divorce
actions in same proceeding avoids two trials based at least in part on same facts; settles
in one suit "all matters existing between the parties"); Robinson v. Garcia, 5 S.W.3d 348,
350-51 (Tex. App.-Corpus Christi 1999, pet. denied) (both claims should have been tried
together as they arose from representation in same case, although distinct injuries and
improper conduct were alleged); but see In re J.G.W., 54 S.W.3d 826, 833 (Tex.
App.-Texarkana 2001, no pet.) (tort claims for personal injury that could have been
brought in divorce-custody suit, but were not essentially connected to that action and would
only be incidental to the main objective of the court, to determine the best interests of
children, not barred by res judicata). Where claims arise at different times through
separate transactions not made in the context of a continuing legal relationship,
res judicata may not apply, even where the parties and subject matter of the transactions
are the same. See Tex. Beef Cattle Co. v. Green, 860 S.W.2d 722, 724 (Tex.
App.-Amarillo 1993, writ denied) (involving cattle transactions). 

 Pinebrook contends the trial court erred in applying res judicata because the claims
it brought in Musgrave III did not arise from the same transaction, because they would not
have been a convenient trial unit in Musgrave I, and because they could not have been
litigated in that suit through the exercise of diligence. However, we already determined in
Musgrave II that the subdivision's restrictive covenant constituted a legal relationship
between Musgrave, his successors in interest, and the lot owners. Musgrave v. Owen, 67
S.W.3d at 520. We found any claim arising from that relationship arises from the same
subject matter. Id. Musgrave's claims in Musgrave I involved the denial of the existence
of obligations under the restrictive covenant, and the determination of the rights of the
parties under the restrictive covenant, with respect to allowing guests to use the property,
timbering, and maintaining a water line. Pinebrook's claims in Musgrave III also seek to
determine the rights of the parties under the restrictive covenant. As we have already held
in Musgrave II, because all the claims relate to the restrictive covenant, they arise from the
same subject matter and should have been brought in the same action if they were mature
at that time. Id. 

 Pinebrook contends, as Musgrave did in Musgrave II, that the claims presented in
Musgrave III would not have formed a convenient trial unit with the claims in Musgrave I
because they would not have been necessary had Musgrave prevailed on his initial
defense that he owed no affirmative duties to the lot owners. This argument fails because
the contingent nature of claims does not preclude the operation of res judicata. See Getty
Oil Co., 845 S.W.2d at 799-00 (relying in part on Tex. R. Civ. P. 51(b), which permits
joinder of two claims even when one of the claims is dependent on disposition of other);
Musgrave v. Owen, 67 S.W.3d at 521. Because the claims arose from the same
transaction and could have formed a convenient trial unit, we affirm the trial court's 
judgment. (4)
 

 Pinebrook contends in its second point of error that the trial court erred in finding
Pinebrook Properties and Pinebrook Management are alter egos of Musgrave, and
judgment should not have been granted against Musgrave individually. Pinebrook
contends the standard of review for all its remaining points of error is abuse of discretion. 
However, in this second point of error, Pinebrook is challenging the trial court's finding of
fact that Pinebrook Properties and Pinebrook Management are the alter egos of Musgrave. 
Findings of fact in a case tried to the court are of the same force and dignity as a jury's
answers to jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in reviewing the legal
or factual sufficiency of the evidence supporting a jury's answer to a jury question. In re
Davis, 30 S.W.3d 609, 613 (Tex. App.-Texarkana 2000, no pet.); Arena v. Arena, 822
S.W.2d 645, 650 (Tex. App.-Fort Worth 1991, no writ).

 When deciding legal sufficiency, in determining whether there is no evidence of
probative force to support a jury's finding, we must consider all of the evidence in the
record in the light most favorable to the party in whose favor the verdict has been rendered,
and we must apply every reasonable inference that could be made from the evidence in
that party's favor. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).
In this review, we disregard all evidence and inferences to the contrary. Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc.,
786 S.W.2d 670, 671 (Tex. 1990). A no evidence point will be sustained when 1) there
is a complete absence of evidence of a vital fact, 2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital fact, 3) the
evidence offered to prove a vital fact is no more than a mere scintilla, or 4) the evidence
conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998).

 More than a scintilla of evidence exists when the evidence supporting the finding,
as a whole, rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions. Burroughs Wellcome Co., 907 S.W.2d at 499. If we find some
probative evidence, we will test the factual sufficiency of that evidence by examining the
entire record to determine whether the finding is clearly wrong and unjust.

 Alter ego is a basis for disregarding the corporate fiction. Castleberry v. Branscum,
721 S.W.2d 270, 272 (Tex. 1986). It applies "when there is such unity between
corporation and individual that the separateness of the corporation has ceased and holding
only the corporation liable would result in injustice." Id. (citing First Nat'l Bank v. Gamble,
134 Tex. 112, 132 S.W.2d 100, 103 (1939)). Alter ego "is shown from the total dealings
of the corporation and the individual, including the degree to which . . . corporate and
individual property have been kept separately, the amount of financial interest, ownership
and control the individual maintains over the corporation, and whether the corporation has
been used for personal purposes." Castleberry, 721 S.W.2d at 272; Hall v. Timmons, 987
S.W.2d 248, 250 (Tex. App.-Beaumont 1999, no pet.). Failure to comply with corporate
formalities is no longer a factor in considering whether alter ego exists. Tex. Bus. Corp.
Act Ann. art. 2.21(A)(3) (Vernon Supp. 2002); see Aluminum Chems. (Bolivia), Inc. v.
Bechtel Corp., 28 S.W.3d 64, 67 (Tex. App.-Texarkana 2000, no pet.).

 Pinebrook Properties, Ltd., a Texas limited partnership, owns the lake, dam,
roadways, and recreational areas at issue in this case. Pinebrook Properties Management,
L.L.C., a Texas limited liability company, is the general partner of Pinebrook Properties. 
Musgrave is the president and general managing partner of Pinebrook Management.

 The trial court erred in its application of law. The theory of alter ego, or piercing the
corporate veil, is inapplicable to partnerships. Under traditional general partnership law,
each partner is liable jointly and severally for the liabilities of the partnership. The Texas
Legislature has altered this general scheme and statutorily created limited partnerships
which are governed by the Texas Revised Limited Partnership Act (TRLPA). Tex. Rev.
Civ. Stat. Ann. art. 6132a-1, § 1.01, et seq. (Vernon Supp. 2002). Under TRLPA, "a
general partner of a limited partnership has the liabilities of a partner in a partnership
without limited partners to persons other than the partnership and the other partners." Tex.
Rev. Civ. Stat. Ann. art. 6132a-1, § 4.03(b). Under the Texas Revised Partnership Act,
"all partners are liable jointly and severally for all debts and obligations of the partnership
. . . ." Tex. Rev. Civ. Stat. Ann. art. 6132b-3.04 (Vernon Supp. 2002). Therefore, in a
limited partnership, the general partner is always liable for the debts and obligations of the
partnership. Limited partners are not liable for the obligations of a limited partnership
unless the limited partner is also a general partner or, in addition to the exercise of the
limited partner's rights and powers as a limited partner, the limited partner participates in
the control of the business. However, if the limited partner does participate in the control
of the business, the limited partner is liable only to persons who transact business with the
limited partnership reasonably believing, based on the limited partner's conduct, that the
limited partner is a general partner. Tex. Rev. Civ. Stat. Ann. art. 6132a-1, § 3.03(a).

 Under corporation law, officers and shareholders are not liable for the actions of
the corporation absent an independent duty. Leitch v. Hornsby, 935 S.W.2d 114, 117
(Tex. 1996). Because officers and shareholders may not be held liable for the actions of
the corporation, the theory of alter ego is used to pierce the corporate veil so the injured
party might recover from an officer or shareholder who is otherwise protected by the
corporate structure. Alter ego is inapplicable with regard to a partnership because there
is no veil that needs piercing, even when dealing with a limited partnership, because the
general partner is always liable for the debts and obligations of the partnership to third
parties. The trial court erred in finding Pinebrook Properties is the alter ego of Musgrave.

 Having determined Pinebrook Properties cannot be the alter ego of Musgrave, we 
now turn to the trial court's finding that Pinebrook Management, which is a limited liability
company, is the alter ego of Musgrave. A limited liability company is any company 
organized and in existence in conformity with the Texas Limited Liability Company Act
(TLLCA). Tex. Rev. Civ. Stat. Ann. Art. 1528n, art. 1.02(A)(3) (Vernon 1997). The Texas
Legislature's enactment of the TLLCA created a new business entity, the limited liability
company. A limited liability company is a separate and distinct entity from other types of
business entities already in existence in Texas, such as the corporation or the limited
partnership. "Except as and to the extent the regulations specifically provide otherwise,
a member or manager is not liable for the debts, obligations or liabilities of a limited liability
company including under a judgment decree, or order of a court." Tex. Rev. Civ. Stat.
Ann. Art. 1528n, art. 4.03(A) (Vernon 1997). 

 In determining if there is evidence legally sufficient to support the trial court's finding,
we look to see if there is such unity between Musgrave and Pinebrook Management that
the separateness has ceased to exist, and whether holding only Pinebrook Management
liable, as the general partner of Pinebrook Properties, would result in injustice. See
Castleberry, 721 S.W.2d at 272. We must look to the relationship between Musgrave and
Pinebrook Management to see if alter ego is shown from the total dealings of Musgrave
and Pinebrook Management-for example, if the corporate and individual properties have
been kept separate; the amount of financial interest, ownership, and control the individual
maintains over the corporation; and whether the corporation has been used for personal
purposes. See id. The evidence of alter ego between Musgrave and Pinebrook
Management presented by the Owners is that Pinebrook Management had no checking
account, had not filed a tax return, and that Musgrave sent a letter to the lot owners,
signing his own name and not designating that he signed it in any other capacity. 
However, the Owners failed to cite any authority holding that failure to have a checking
account, or failure to file tax returns, establishes alter ego. There is no evidence provided
that Musgrave commingled funds or that his assets and those of Pinebrook Management
were not kept separate. The evidence clearly shows Pinebrook Management has never
had the need, or been required, to file a tax return. This is no evidence that Pinebrook is
the alter ego of Musgrave.

 The Owners also rely on a letter signed by Musgrave after he transferred the
property to Pinebrook Properties which denied reimbursement for expenditures. They
contend this letter shows alter ego and Musgrave's disregard for the corporate structure. 
However, failing to sign the letter with "president," or putting the corporate name on the
letter, is a corporate formality. Failure to comply with corporate formalities is no longer
considered in determining alter ego and is therefore no evidence of alter ego. Tex. Bus.
Corp. Act Ann. art. 2.21(A)(3); Aluminum Chems. (Bolivia), Inc., 28 S.W.3d at 67. 

 The Owners contend Musgrave testified that Pinebrook Properties' and Pinebrook
Management's only sources of income are derived from contributions or loans made by
Musgrave. A review of Musgrave's testimony reveals neither Pinebrook Properties nor
Pinebrook Management have any sources of income. Musgrave specifically testified there
has never been any money flowing through Pinebrook Management. The only money
expended on Pinebrook Management by Musgrave shown by the evidence is that he paid
to have it incorporated. Musgrave has never received any funds from Pinebrook Properties
or Pinebrook Management. There is evidence that Musgrave lent money to Pinebrook
Properties via written open notes payable on demand. However, this is no evidence of the
relationship between Musgrave and Pinebrook Management, or that their funds are
commingled, or that Musgrave has disregarded the corporate structure of Pinebrook
Management in any way. 

 The final evidence on which the Owners rely is Musgrave's testimony at trial: "Well,
I own the property. I pay taxes on the property." The Owners contend this statement
shows Musgrave disregarded the separation of the corporate enterprise. The context of
this statement is as follows:

 Q. You are objecting to the property owners association making
any rules or regulations regarding that lake, correct?


 A. Not any.


 Q. Well, what does the word "exclusive" mean to you?


 A. Well, I own the property. I pay taxes on the property. Their
exclusive rights are for use of the lake and the recreational property for
hunting and fishing. Beyond that, they don't have the rights to set rules and
regulations.


Although Musgrave did make the statement on which the Owners rely, based on the
context in which it was made, we conclude it is no more than a scintilla of evidence that
Musgrave disregarded the corporate structure or enterprise. 

 The evidence reveals Musgrave is not the sole manager of Pinebrook Management.
There are two other managers involved, Bill Ragsdale and Billy Boles. Finally, there is no
evidence that Musgrave used Pinebrook Management for personal purposes. 

 The Owners stated at oral argument that Musgrave transferred the land to
Pinebrook Properties after suit was filed against him, suggesting that Pinebrook Properties
and Pinebrook Management were created fraudulently. However, the Owners did not
plead fraud or that Pinebrook Properties or Pinebrook Management were created in
violation of law. The Owners, in their pleadings, rely solely on alter ego as the basis for
Musgrave's liability. 

 The trial court erred in finding that Pinebrook Properties, a limited partnership, is the
alter ego of Musgrave, and there is no evidence to support the trial court's finding that
Pinebrook Management is the alter ego of Musgrave. Because the Owners, in their
pleadings and trial strategy, relied on attaching individual liability to Musgrave solely on the
theory of alter ego, we reverse the judgment as to Musgrave and render judgment that the
Owners take nothing against him.

 In its third point of error, Pinebrook contends the Brookhaven Property Owners
Association may not recover in the capacity in which it sued. Pinebrook contends the 
Association does not meet the definition of "property owners' association" under the Texas
Property Code. See Tex. Prop. Code Ann. § 202.001 (Vernon 1995). They also complain
the Association lacked the authority to file the counterclaim representing the lot owners.
Pinebrook contends, because the Association lacked the authority to file the counterclaim,
it may not recover in the capacity in which it sued. 

 The evidence conclusively shows the Association is a lot owner in its own right. The
Association owns a lot on North Shore. The Association did not designate the capacity in
which it brought suit, whether on behalf of its members or as a lot owner. The trial court
therefore did not err in finding the Association had the right to recover.

 In its fourth point of error, Pinebrook contends the trial court abused its discretion
by concluding that it did not have the right to regulate the lake, roadways, and recreational
property, and that the Association does have such right. With respect to the land owned
by Pinebrook Properties and subject to a restrictive covenant in favor of the lot owners, the
trial court found the Association is entitled and has authority to promulgate and enforce
rules which protect the property owners' exclusive rights to the use and enjoyment of the
lakes, dam, roadways, and recreational areas. The trial court therefore ordered Pinebrook 
permanently enjoined from promulgating rules and regulations regarding the subdivision
which would interfere with the lot owners' exclusive rights, along with other specific
injunctions, as previously stated, relating to Pinebrook's property.

 Pinebrook contends the trial court erred because Pinebrook is the fee simple owner
of the land in question and that fee simple absolute conveys the full panoply of rights in
real property. Calhoun v. Killian, 888 S.W.2d 51, 55 (Tex. App.-Tyler 1994, writ denied). 
According to Pinebrook, the lot owners' exclusive rights to hunt, fish, and recreate on the
lake and recreational property, and to come and go over the roadways, does not diminish
Pinebrook's right to regulate its property, so long as the regulations do not interfere with
those rights of recreation and ingress and egress. 

 Although Pinebrook owns the land in fee simple, the land is subject to the restrictive
covenant in favor of the lot owners, giving the lot owners an interest and legal right in the
land. Pinebrook did not receive the full panoply of rights when it purchased its land. The
lot owners have exclusive rights to the use and enjoyment of the lake, dam, and
recreational areas. However, just because Pinebrook does not own the entire bundle of
sticks does not mean it does not have the right to regulate the property. There is no
evidence to show Pinebrook, or any of its predecessors, gave away its right to regulate. 
In 1968, the original owners of the property executed and filed in the county clerk's office
of Wood County a document entitled "Declaration of Restrictive Use." This document
expressly states:

 No use shall ever be made of the lands described in "Exhibit A"
attached hereto, which will ever interfere with the rights and privileges of the
owners of lots in the addition designated as Brookhaven-In-The-Pines to use
such lands for hunting, fishing and recreation; subject at all times to
reasonable regulation by us to insure the safety, sanitation and pleasure of
the greatest number of such lot owners. 


In this document, Pinebrook Properties' predecessors explicitly reserved the right to make
regulations to ensure the safety, sanitation, and pleasure of the greatest number of lot
owners. This is a right expressly reserved, and the trial court erred in holding Pinebrook
had no right to regulate the lake, dam, roadways, or recreational areas. 

 As we stated in Musgrave I, "[a] purchaser is charged with knowledge of the
provisions and contents of recorded instruments."  Musgrave, 990 S.W.2d at 396; Harris
County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n, 933 S.W.2d 570, 575
(Tex. App.-Houston [1st Dist.] 1996, writ denied). The "Declaration of Restrictive Use" is
on file in the Wood County records and has been used in previous lawsuits to define the
burdens generated on the landowners and the benefits granted to the lot owners. The trial
court's declaratory judgment that Pinebrook has no control over the lake and recreational
areas located in the Brookhaven in the Pines subdivision, and is without authority to
promulgate rules and regulations regarding the lake and property located in the
Brookhaven in the Pines subdivision, is contrary to the "Declaration of Restrictive Use." 
This document specifically outlines and reserves for Pinebrook the right to make
reasonable regulations to "insure the safety, sanitation and pleasure of the greatest
number of such lot owners." The trial court's holding takes away Pinebrook's expressly
reserved right to regulate. Pinebrook's contention is sustained.

 In its fifth point of error, Pinebrook contends the trial court should not have found
that Musgrave made an implied dedication of a recently constructed roadway on property
which is not contained within the Brookhaven in the Pines Addition. Pinebrook contends
Musgrave, the owner of the roadway, should be free to leave the roadway open or closed
because it was not part of the original subdivision and was not dedicated to public use. 

 In its findings of fact, the trial court found that any roadway impliedly dedicated as
a public roadway shall remain open to the public and the lot owners, and that such
roadways include, but are not limited to, all existing roadways located in the subdivision,
and further that the lot owners of the subdivision, as well as the public, are entitled to and
shall have a prescriptive easement as to the said roadways. The trial court erred in making
this finding. 

 The finding of an implied dedication results in the appropriation of private property
for public use without any compensation to the landowner and is thus disfavored in law as
contrary to Article I, § 17 of the Texas Constitution. See Scott v. Cannon, 959 S.W.2d 712,
718 n.6 (Tex. App.-Austin 1998, pet. denied); County of Real v. Hafley, 873 S.W.2d 725,
728 (Tex. App.-San Antonio 1994, writ denied); see also Tex. Const. art. I, § 17. The theory of implied dedication rests on the presumption of an intent by the
landowner to devote the landowner's property to public use. Medina Lake Prot. Ass'n v.
Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1, 656 S.W.2d
91, 94 (Tex. App.-San Antonio 1983, writ ref'd n.r.e.). Under the common law, an owner
of private property could either expressly or impliedly make known his intention to
dedicate. (5) Moody v. White, 593 S.W.2d 372, 378 (Tex. Civ. App.-Corpus Christi 1979, no
writ). In 1981, the Texas Legislature changed the common law and abolished the theory
of implied dedication of roads to public use in counties with a population of 50,000 or less,
effective August 31, 1981. Act of May 31, 1981, 67th Leg., R.S., ch. 613, 1981 Tex. Gen.
Laws 2412-13, amended by Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex.
Gen. Laws 1025, 1195-96. (6) This statute acts prospectively and does not affect roads
impliedly dedicated to public use before the effective date. Lindner v. Hill, 673 S.W.2d
611, 615 (Tex. App.-San Antonio 1984), aff'd, 691 S.W.2d 590 (Tex. 1985). 

 We take judicial notice under Tex. R. Evid. 201 that Wood County, where the
roadways are located, has a population of 36,752 people according to the 2000 census. 
Because Wood County has a population of less than 50,000, the only way a roadway may
be dedicated to public use is through an express dedication. "An oral dedication or intent
to dedicate by overt act is not sufficient to establish a public interest in a private road under
this chapter." Tex. Transp. Code Ann. § 281.003(b) (Vernon 1999). Because there is
no evidence presented that the roadways in the Brookhaven in the Pines Addition, or
accessing the addition, were impliedly dedicated to public use before August 31, 1981, the
trial court erred in finding these roadways were impliedly dedicated to public use. We
reverse the trial court's finding regarding the implied dedication to public use of the
roadways.

 In Pinebrook's sixth point of error, it contends the trial court erred in awarding
damages to the Association for repairs made to the roadways. Because of our holding
regarding alter ego, we sustain Pinebrook's sixth point and reverse the judgment against
Musgrave. Because Musgrave was the only one against whom judgment was rendered
for damages, this part of the judgment is reversed and rendered.

 Pinebrook, in its seventh point of error, contends the injunctions entered by the trial
court are void on their face. Pinebrook contends no injunction contained in the trial court's
judgment included any of the reasons any injury would be suffered, rendering all of them
void, and all injunctive relief in the judgment should be reversed for that reason alone. Rule 683 provides:

 Every order granting an injunction and every restraining order shall set
forth the reasons for its issuance; shall be specific in terms; shall describe in
reasonable detail and not by reference to the complaint or other document,
the act or acts sought to be restrained; and is binding only upon the parties
to the action, their officers, agents, servants, employees, and attorneys, and
upon those persons in active concert or participation with them who receive
actual notice of the order by personal service or otherwise.


Tex. R. Civ. P. 683. Rule 683 requires the injunction set forth the reasons for its issuance,
and, as stated in Pinebrook's brief, does not require "reasons any injury would be
suffered." The trial court entered findings of fact and conclusions of law, and specifically
stated it granted the injunctive relief because: 

 The Court finds that Defendants have no adequate remedy at law for the
losses injuries, both actual and threatened and that such injuries and losses
are continuing and irreparable. The Court further finds that the rights
involved are unique and irreplaceable, so that it is impossible to accurately
measure, in monetary terms, the damages caused and to be caused by the
Plaintiff's conduct and that the losses to the Defendants from Plaintiff's
conduct are likely to exceed the financial worth of the Plaintiff, so as to
prevent any adequate compensation to Defendant, even if money damages
were a sufficient remedy. As such, the Court finds that Plaintiff is entitled to
the following injunctive relief: . . . .

 

We find the trial court complied with Rule 683, and the injunctions are not void on their
face. 

 Pinebrook further complains about the trial court's injunctions preventing the
replacement of garbage dumpsters, allowing wake-producing watercraft on the lake,
installing speed control bumps, lowering the level of the lake, and promulgating rules for
regulation of the property. Pinebrook contends all these injunctions interfere with its right
to reasonably regulate its property for safety, sanitation, and the pleasure of the majority
of the lot owners, and there is no evidence any of these actions would interfere with the lot
owners' rights to recreate. 

 A successful applicant for injunctive relief must demonstrate the following four
grounds for relief: 1) the existence of a wrongful act; 2) the existence of imminent harm;
3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. 
Frey v. DeCordova Bend Estates Owners Ass'n, 632 S.W.2d 877, 881 (Tex.
App.-Fort Worth 1982), aff'd, 647 S.W.2d 246 (Tex. 1983). In an appeal from a permanent
injunction, the standard of review is whether the trial court committed a clear abuse of
discretion. Priest v. Tex. Animal Health Comm'n, 780 S.W.2d 874, 875 (Tex. App.-Dallas
1989, no writ).

 We first review the trial court's injunction enjoining Pinebrook from interfering with 
the replacement dumpsters at the garbage collection site on Pinebrook's property. 
Although the Owners sought this relief in their pleadings, they presented no evidence at
trial regarding the garbage dumpsters. There is no evidence of a wrongful act, the
existence of imminent harm, irreparable injury, or the absence of an adequate remedy at
law regarding the garbage dumpsters. Absent any evidence, the trial court abused its
discretion in issuing a permanent injunction regarding garbage dumpsters.

 Pinebrook next attacks the permanent injunction enjoining Pinebrook from allowing
wake-producing watercraft and recreational vehicles to be used by lot owners, and guests
of the lot owners, on the recreational property, roadways, lake, and dam. The only
evidence presented regarding recreational vehicles on the recreational property or
roadways was that lot owners use four-wheelers "and the like" in such areas. There is no
evidence of imminent harm or irreparable injury caused by the use of these vehicles. 
Neither is there evidence of the absence of an adequate remedy at law. Regarding wake-producing watercraft, none of the evidence showed imminent harm to the rights of the lot
owners to fish or recreate, or that an irreparable injury has occurred. Under the
"Description of Restrictive Use," Pinebrook Properties has a limited sphere in which it may
regulate its property. Absent a showing that wake-producing watercraft or recreational
vehicles endanger safety, or that the majority of the lot owners want to restrict their use,
Pinebrook is under no obligation to promulgate rules. The only evidence presented
concerning recreational or wake-producing vehicles on the lake was the opinion of one lot
owner that Pinebrook's attempts to allow 125-horsepower boats on the lake has impaired
the lot owners' enjoyment of the lake. There is no evidence as to the percentage of lot
owners who want or do not want wake-producing or recreational vehicles on the lake or
land, or that such vehicles pose a safety risk. The trial court erred in enjoining Pinebrook
from allowing wake-producing watercraft or recreational vehicles on its property.

 With regard to the speed bumps, the Owners pled that the speed bumps were
installed without any expert advice and that they are a hindrance and do not improve the
safety of the property owners. The evidence presented at trial specifically deals with speed
bumps located on Brookhaven Retreat property, which is land owned individually by
Musgrave, and we have held that Musgrave has no individual liability. Further, there is no
evidence Pinebrook Properties has placed speed bumps on the property it owns and
controls. There is also no evidence that Pinebrook Properties or Pinebrook Management
plan to install speed bumps. Finding no evidence of a wrongful act by Musgrave
individually, Pinebrook Properties, or Pinebrook Management, we reverse the injunction
prohibiting speed bumps and ordering their removal.

 The trial court also enjoined Pinebrook from lowering the level of the lake without
consulting the Association first. In their pleadings, the Owners contended Pinebrook
lowered the lake before spawning season, thereby jeopardizing the viability of the spawn. 
They also contend the lowered lake level created a greater fire threat to the lot owners. 
We have specifically held that Pinebrook has a duty to maintain the lake. According to the
testimony, part of lake maintenance is to lower the level of the lake at times. 

 According to the expert testimony, there are two reasons for lowering the level of
the lake: 1) to control shoreline vegetation; and 2) to control the population of forage fish. 
Dr. Joe T. Lock, whom the Association retained to give advice regarding lake management,
testified he did not recommend lowering the lake. This was because he understood the
lowering was not scheduled until February, which he thought was too late because the lake
level needed to be raised by March. Lock testified there was not enough shoreline
vegetation to warrant a draw-down of the lake in July 2000. A letter sent to the lot owners
from Pinebrook stated that an expert had been hired regarding the lake and that it planned
to lower the lake in January 2000. The letter explained that the draw-down would take
seven days and that the lake would be back to its normal level in three weeks. The
evidence shows Pinebrook did lower the level of the lake in January 2000. There is no
evidence Pinebrook lowered the lake after that. Further, there was no evidence the lake
did not need to be drawn down at that time or that any harm resulted from the draw-down. 
The Owners presented no more than a scintilla of evidence that the lake was or would be
harmed by the maintenance actions taken by Pinebrook. The only evidence presented
regarding harm was a former Association president's statement that he thought the fish
looked more emaciated after the draw-down. Although the Owners pled that lowering the
level of the lake would harm spawning and increase the risk of fire, no evidence was
presented that either consequence occurred. Because there was no evidence of harm or
irreparable injury, we find the trial court abused its discretion in enjoining the lowering of
the lake level.

 Having found the trial court erred in declaring that Pinebrook has no right to
promulgate rules for regulation of the property, we reverse the trial court's judgment
enjoining Pinebrook from regulating the property. As previously stated, Pinebrook's
predecessors in interest specifically reserved the right to regulate, in limited circumstances. 
There is no evidence that any rules promulgated by Pinebrook have caused harm by
restricting the lot owners' exclusive rights to fish, hunt, and recreate on the land, or that
Pinebrook plans to promulgate any rules or regulations in violation of the "Description of
Restrictive Use." 

 Having found the trial court erred in finding an implied dedication of roadways to
public use, we reverse the injunction prohibiting the closure of any roadway in the
subdivision. Because the injunction regarding the roadways was ancillary to a finding of
dedication to public use, and there is no evidence that Pinebrook Properties or Pinebrook
Management attempted to close any roadways on Pinebrook Properties' land, we reverse
the injunction. 

 The trial court's injunction preventing Pinebrook Properties or Pinebrook
Management from promulgating rules and regulations regarding the subdivision was clearly
ancillary to the trial court's declaration that neither Pinebrook Properties nor Pinebrook
Management has the right to promulgate rules and regulations. Having found Pinebrook
Management may promulgate rules and regulations in compliance with its contractual
rights as filed in the Wood County records, there is no basis to support this injunction. 

 Because Pinebrook did not complain of the remaining two injunctions, we affirm the
trial court's action in permanently enjoining Pinebrook Management and Pinebrook
Properties, Ltd. from: 1) allowing use of the lake and dam to anyone other than lot owners
and their accompanied guests, as previously ordered; and 2) interfering with the exclusive
rights of lot owners of Brookhaven to use the lake, dam, roadways, and recreational areas.

 Because of our holding regarding alter ego, we sustain Pinebrook's eighth point of
error that the trial court erred in granting attorney's fees. Since we have held that
Musgrave has no individual liability, and since Musgrave was the only party against whom
judgment was rendered for attorney's fees and expenses, the judgment for such fees and
expenses is reversed and rendered. 

 In summary, we affirm the trial court's judgment finding that Pinebrook Properties'
claims against the Association in the 2000 suit are barred by res judicata and that the
Association had capacity to sue. We also affirm the trial court's permanent injunction
against Pinebrook Management and Pinebrook Properties, Ltd. enjoining them from
allowing use of the lake and dam to anyone other than lot owners and their accompanied
guests, and from interfering with the exclusive rights of lot owners of Brookhaven to use
the lake, dam, roadways, and recreational areas. All of Pinebrook's other points of error
are sustained, and the trial court's judgment on those points is reversed and rendered. 


 Accordingly, the judgment is affirmed in part and reversed and rendered in part.



 Donald R. Ross

 Justice 


Date Submitted: April 25, 2002

Date Decided: May 24, 2002


Publish
1. Tex. Civ. Prac. & Rem. Code Ann. § 37.001, et seq. (Vernon 1997 & Supp. 2002).
2. Although the Owners sued Musgrave, Pinebrook Management, and Pinebrook
Properties, the judgment for monetary damages and attorney's fees is only for the
Association and against Musgrave. 
3. G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App.
1929, holding approved).
4. Pinebrook does not contend in its brief that these claims were not mature at the
time of Musgrave I, only that they do not arise from the same transaction and do not form
a convenient trial unit, and fails to direct us to any evidence regarding maturity. We
therefore do not review the issue of the maturity of the claims brought by Pinebrook in
Musgrave III.

5. Implied dedication is sometimes referred to in Texas as "common-law dedication"
or "dedication by estoppel." See, e.g., Greenway Parks Home Owners Ass'n v. City of
Dallas, 159 Tex. 46, 312 S.W.2d 235, 241 (1958); Roberts v. Allison, 836 S.W.2d 185, 189
(Tex. App.-Tyler 1992, writ denied); Barstow v. State, 742 S.W.2d 495, 504 (Tex.
App.-Austin 1987, writ denied); Poindexter v. Schaffner, 162 S.W. 22, 23 (Tex. Civ.
App.-Dallas 1913, no writ). 
6. To the extent we stated in Graff v. Whittle, 947 S.W.2d 629, 635 (Tex.
App.-Texarkana 1997, writ denied), that the effective date of Tex. Rev. Civ. Stat. Ann. art.
6812h, § 4 was September 1, 1985, we were incorrect. September 1, 1985, was the
effective date of the amendments to the statute. Act of May 27, 1985, 69th Leg., R.S.,
ch. 509, 1985 Tex. Gen. Laws 2099.